CLAUDE D. FRANKLIN, v. KANSAS CITY PUBLIC SERVICE COMPANY.—
186 S. W. (2d) 546.

Kansas City Court of Appeals. March 5, 1945.

152

*Charles L. Carr, Watson, Ess, Groner, Barnett & Whittaker, Carl E. Enggas* and *Douglas Stripp* for appellant.

*Louis N. Goessy, J. W. Kachelhofer* for respondent.

SPERRY, C.—This is a suit for damages based on personal injuries received by Claude D. Franklin, plaintiff, when the truck in which he was seated was struck by a street car owned and operated by Kansas City Public Service Company, defendant. Trial to a jury resulted in a verdict and judgment in favor of plaintiff in the amount of $7500. Defendant appeals.

The sufficiency of the evidence to make a submissible case is not challenged. Therefore we will state only such facts of record as are necessary to an understanding and disposition of the questions presented by the appeal.

Plaintiff was about 64 years old at the time of the accident. He had been regularly employed, for about 25 years, as a bakery salesman, until about 1937 when a change of management resulted in his being released from such employment. Thereafter, he worked steadily for about one and one half years as a time checker, and at other tasks, for his union. Following this work, he had no full time employment but worked part time for the union, was occasionally employed as a baker's salesman, and worked at other odd jobs. About a week prior to the accident he was employed by Crowe Bakery as a driver and salesman.

The collision occurred about 6 o'clock A. M., February 2, 1942, between 37th and 39th Streets on South Main, in Kansas City, when a truck, operated by plaintiff and in which he was seated, became stalled on defendant's street car tracks and was struck by defendant's street car. As a result of the collision plaintiff was rendered unconscious and remained in that condition for a period of about 24 to 48 hours. He was removed from the truck to St. Mary's Hospital where he remained until February 11, 1942. He suffered a concussion of the brain and a bruised spot, about the size of a dollar, on his left temple. The hospital records tended to prove that he suffered concussion of the brain, complained of pain in back and neck, had bruises over left temple, possible injury to neck, complained of soreness in

chest and scapular region, very weak and shaky, and complained of distress in occipital region.

Dr. Bourke, who treated him on behalf of the employer, testified to the effect that a concussion of the brain means that plaintiff's brain was injured, how great or little he did not know; that he treated him for a period of several weeks after the accident; and that, five weeks after the accident, plaintiff still complained of pain in the back of his neck and shoulders. He released plaintiff for work five weeks after the accident. He found no symptoms of a stroke of apoplexy.

Plaintiff's testimony, regarding his condition as a result of collision, and thereafter, was to the effect that after he went home from the hospital he stayed around in the house for several days; that he attended police court about the middle of March; that for about two or three months after the accident he suffered from weakness in the legs and pain in his head; that this condition cleared up after about two or three months, and thereafter he felt fine, was in good health and felt fine all summer, until in November, 1942; that he drove his car two or three days a week from about two months after his return from hospital, until November 29, 1942; that he drove the car on a three day trip in September, 1942; that he worked in September for the Wonder Bread Company and was in good physical condition at that time; that he worked for the three weeks immediately prior to November 29, 1942, putting up storm windows, and that he had no aches or pains at that time; that about two weeks prior to November 29, 1942, his lips began to twitch, his speech thickened, and he became nervous and unsteady as to hands and legs; and that he suffered a paralytic stroke on November 29, 1942, from which he became helpless for a time and from which, at the time of trial, he was still unable to use his right leg and arm and was wholly incapacitated for labor.

Plaintiff also testified that on October 12, 1941, he fell some ten or twelve feet from a building, alighting on his chest and face. He broke three ribs. There was evidence to the effect that his nose bled from the fall. He was in hospital four days because of injuries so received. There was also evidence to the effect that two years prior to the collision he suffered from high blood pressure and had received treatment therefor.

Plaintiff offered the testimony of Dr. Lee, who attended him after he suffered the stroke. Dr. Lee stated that it was his opinion, as a physician, based upon his examination, observation and treatment of plaintiff, that the stroke was either due to a blocking of the arteries leading to a portion of the brain, or to a hemorrhage under the brain covering producing pressure on the brain. He found no symptoms of a cerebral hemorrhage and did not think that plaintiff had suffered such a hemorrhage.

In answer to a hypothetical question, Dr. Lee stated that it was possible for one to have a head injury (such as might have resulted from the collision) causing blood under the brain covering, and continue one's duties for as long as a year and then have a stroke therefrom and become paralyzed and incapacitated. He also stated that a stroke might be similarly caused by an injury received four or five years prior thereto; that such an injury could as likely be caused from a fall of twelve feet as from a collision; that bleeding from the nose, caused by a fall, is evidence of a head injury; that one suffering from high blood pressure is much more susceptible to a clotting of the blood, either from trauma or other cause, than one not suffering from high blood pressure; that the older a person may be, the more likelihood there is of a stroke; that the higher the blood pressure is the greater is the tendency to suffer a stroke; that the interval between a traumatic injury and a stroke is usually from six days to six weeks; and that if the interval between an injury and a stroke is from ten months to a year that is some evidence that the stroke was not caused by the injury.

Dr. Bourke stated that he could not answer yes or no to the question of whether or not, in his opinion as a doctor, plaintiff's stroke was caused by injuries received in the collision.

Dr. Nigro testified to the effect that he saw plaintiff at St. Mary's Hospital after the accident while he was yet unconscious. He did not examine him and his testimony is of little value on the questions raised on this appeal.

Defendant's medical evidence was to the effect that there was no causal connection between the injuries received by plaintiff in the collision and the stroke suffered by him some ten months thereafter.

Defendant offered instructions designated as D and E, the effect of which was to tell the jury that in arriving at its verdict it should not take into consideration the evidence relating to the stroke. The court refused to give such instructions. Under the instructions given the jury was not forbidden to take into consideration the disabling effects of the stroke in arriving at the amount of its verdict. The refusal of the court to give either of said instructions, D and E, is assigned as error. Defendant contends that there is no substantial evidence tending to prove that plaintiff's injuries, suffered in the collision, caused or contributed to the stroke suffered by him; and that the evidence discloses that his disability at the time of the trial seems, in large measure, from the stroke.

Upon careful study and examination of the record the writer is of the opinion that the point is well taken. ,

Whether or not the stroke was caused by the concussion received by plaintiff in the collision is a medical question, and its answer, in the state of this record, is only to be learned from those learned in medical knowledge and practice. ''No layman could know or have any reason-

able basis for an inference that it did result from it.'' [Kimmie v. Terminal R. R. Ass'n. of St. Louis, 334 Mo. 596, 66 S. W. (2d), 561, 1. c. 564.]

One of the medical witnesses who testified for plaintiff, Dr. Bourke, flatly refused to state any opinion at all on the question of whether or not the stroke could have been, or was, caused by the concussion received in the collision. He stated that the question could not be answered either yes or no.

Dr. Lee testified that it was ''perfectly possible to have a head injury with blood under the brain covering and continue in all of one's duties for as much as a year and still be paralyzed and incapacitated as the result of the injury.'' He did not state that, in his opinion, the stroke resulted from blood under the brain covering *caused by the collision*. He further testified to the effect that the stroke could as likely have been caused by a fall (as from a roof) four or five years prior to the stroke, as by the collision. His further testimony in this connection failed to clear the fog of doubt surrounding the answer to the question of what really caused the stroke but, on the contrary, tended to increase it.

Defendant's medical testimony was positive and to the effect that there was no causal connection between the concussion and the stroke. Hense, plaintiff s case was not aided by defendant's evidence on this point.

The burden was on plaintiff to prove, by substantial evidence, that the stroke was caused by the collision, else he could not recover for disablement resulting therefrom. [Berry v. Kansas City Public Service Company, 108 S. W. (2d) 98, 1. c. 107.] He offered the testimony of two medical witnesses in an effort to prove causal connection. Dr. Bourke refused to venture an opinion on the question. Dr. Lee stated, obliquely, that it could have been so caused; but his opinion to the effect that it ''could'' have been is ''no more than an assurance'' that such a result was possible, and was not substantial evidence tending to prove that the stroke was, in fact, caused by the collision. [Berry v. Kansas City Public Service Company, 341 Mo. 658, 108 S. W. (2d) 98, 107, *supra.*]

In Hunt v. Armour, 345 Mo. 677, 136 S. W. (2d) 312, 1. c. 316, it was said: ''It is now settled that, in matter where the evidence does not exclude all other causes and in which no laymen could know or have any reasonable basis for an inference as to cause, opinions of doctors that a certain occurrence or condition might, could, or would produce a certain result is no more than an assurance that such a result was scientifically possible, and does not alone constitute substantial evidence that such occurrence or condition did cause it.''

Defendant urges reversal because the verdict and judgment were excessive. Since there was no substantial evidence of causal connection between the collision and the stroke such an instrument as

was requested by defendant should have been given. It must be assumed that the jury took the stroke, and the disability resulting therefrom, into consideration in assessing damages; and since such disability must have considerably augmented the damaged allowed, there is no basis for an order of *remittitur*. [Barry v. Kansas City Public Service Company, *supra.*]

Since we find no error except such as effects the amount of damages, the judgment should be reversed and the cause remanded for a new trial, in accordance with the views herein expressed, on the issue of the amount of damages only. [Laws Missouri, 1943, page 395, Section 140 (c) Borgstede v. Wetterau & Sons Grocery Company, 116 S. W. (2d) 179.]

*Boyer, C.*, concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded for new trial on the question of the amount of damages only. All concur.