Barbara PIJUT, Respondent,

v.

SAINT LOUIS PUBLIC SERVICE COMPANY, a corporation, Appellant.

No. 47144.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1959.

Motion to Modify Decision or for Rehearing Denied Jan. 11, 1960.

Lester F. Stephens, St. Louis, for appellant.

Don B. Sommers and Barnhart and Sommers, St. Louis, for respondent.

HOUSER, Commissioner.

A trial jury in the Circuit Court of the City of St. Louis awarded Barbara Pijut damages in the sum of $25,000 for the wrongful death of her husband Florian. Defendant St. Louis Public Service Company has appealed from the ensuing judgment.

Defendant's streetcar tracks run north and south on Grand Avenue. Caroline and Hickory streets run east and west and intersect Grand Avenue. Hickory is two blocks north of Caroline. Defendant's streetcar struck the rear of an automobile in which Florian was a passenger, inflicting injuries alleged to have resulted in Florian's death. At the time it was struck the automobile had come to a stop at Grand Avenue and Hickory, on the streetcar tracks, waiting for southbound traffic on Grand Avenue to pass so as to permit the driver of the automobile to make a left turn west into Hickory.

Plaintiff's and defendant's theories and evidence concerning the manner in which the collision occurred differed materially.

*Plaintiff's* theory of the facts: One of defendant's streetcars, northbound on Grand, stopped at Caroline and was loading passengers. Plaintiff's husband was riding north on Grand in an automobile driven by Charles Doggendorf. The automobile stopped at Caroline, then proceeded past the side of the stationary streetcar and continued north on Grand. In the first block north of Caroline Doggendorf turned to his left and onto the northbound street-

car tracks. At that time the streetcar had not yet moved from its stop at Caroline. Doggendorf's automobile continued on north for approximately 300 feet and upon reaching Hickory, Doggendorf stopped the automobile on the northbound streetcar tracks, waiting for southbound traffic on Grand to permit him to make a left turn into Hickory. After having been stopped for 10 to 20 seconds Doggendorf heard the gong of a streetcar sounding behind him. He glanced into the rearview mirror. At that time the streetcar was near the rear of the automobile, traveling at a speed which Doggendorf did not estimate. The collision occurred almost immediately thereafter. The rear of the automobile was struck by the left front side of the streetcar just as Doggendorf started his automobile in motion. The automobile was thrown in a northwest direction and came to a stop against the west curb of Grand Avenue, a distance of 70 or 75 feet from the point of impact.

*Defendant's* theory of the facts: At a time when the northbound streetcar was traveling at a speed of approximately 25 to 30 m. p. h., 100 feet south of the south curb of Hickory, the automobile passed on the right of the moving streetcar. The automobile then swerved to the left ("he cut in on me very sharply") and onto the streetcar tracks in front of the moving streetcar, proceeded north for approximately a streetcar length and then the driver brought the automobile to a sudden stop, its front end at the south curb of Hickory, directly in front of the streetcar. At the time the automobile moved onto the streetcar tracks it required 125 to 150 feet to bring the streetcar to a full stop, under the existing conditions. The operator applied the emergency brakes as the automobile was "cutting in" on the tracks, in an effort to stop the streetcar in time to avoid a collision. The speed of the streetcar was reduced to three miles an hour at the time of impact, but it was too late to avoid a collision.

Appellant's first point is that the court should have directed a verdict for defendant for the reason that there was no substantial evidence that the collision was the proximate cause of the death of Florian Pijut. Appellant maintains that the testimony of Dr. Klein, the only witness offered by plaintiff to establish a causal connection between the collision and the death, was contradictory and confusing; that one version of his testimony tends to show some degree of causation but that another tends to disprove it; that he reduces the ultimate issue of the cause of death to an unknown; that the death could have resulted from either of two causes and there was no showing which of the two produced the death; that the jury should not be permitted to speculate or guess as to which version should be accepted; and that the contradictory testimony of a single witness does not warrant submission of the question to a jury. Appellant cites cases for the propositions that (1) where the death could have resulted from either of two causes, for one of which the defendant would be liable, plaintiff must show with reasonable certainty that the cause for which defendant was liable produced the result, Herke v. St. Louis & S. F. R. Co., 141 Mo.App. 613, 125 S.W. 822, and (2) the contradictory testimony of a single witness relied on to prove facts, makes no case warranting submission of a question to the jury, in the absence of an explanation or other circumstances tending to show which of the two versions is correct. Brown v. Metropolitan Life Ins. Co., Mo.App., 317 S.W.2d 651 (3–5); Coonis and Fortner v. City of Springfield, Mo.Sup., 319 S.W.2d 523; Franklin v. Kansas City Public Service Co., 239 Mo.App. 151, 186 S.W.2d 546(5); Hunt v. Armour & Co., 345 Mo. 677, 136 S.W.2d 312.

Prior to October 6, 1955 Florian was an active and robust man weighing 190–200 pounds. He engaged in sports, worked regularly, and had not lost any time from his work from illness. He was engaged

in rather heavy work, carrying loaded boxes of foods and drinks from trucks into factories. The boxes weighed 100 pounds or more. At some stops the boxes had to be carried to the upper floors of factories. Florian had suffered from nephritis for 15 years, for which he went to doctors for periodic checkups, but the disease, according to plaintiff's evidence, had never resulted in hospital confinement and had not disabled him to any extent whatever.

The collision occurred on October 6, 1956. Florian died on November 22, 1956. When he came home after the accident he was holding his neck. He laid down. He was cold. He vomited. He went to bed and stayed in bed. He vomited quite frequently the next day, and was very cold. He stayed in bed with extra covers. He never returned to his employment except for one day when he reported but did not work because he got "sick and weak" and had to be taken home. After October 6 he never recovered his strength. He became progressively weaker. His legs started swelling, his color became yellow and he developed a strong body odor. He could not eat without vomiting. He lost weight, "just seemed to sort of vanish away." From the date of the accident to the date of his death six weeks later his condition became steadily worse. The death certificate, signed by Dr. Klein, showed the disease or condition directly leading to death as Chronic Glomerulonephritis and that other secondary conditions were Hypertension and Acute Cholecystitis. On direct examination Dr. Klein testified as follows: Florian was his patient, beginning in August, 1955. He treated Florian for upper respiratory infections, acute indigestion, etc. Florian had chronic nephritis, and was kept on a strict diet. On October 6, 1956 Dr. Klein examined Florian at a hospital. Florian had a whiplash type injury, causing a sprain of his thoracic area and the cervicle. "There was definitely shock." Five days after the accident Florian had an acute flare-up of chronic nephritis. His blood pressure rose, he de-

veloped an edema, albumen, temperature and his condition became progressively worse. It finally reached the state of an acute nephritis flare-up. His kidneys failed and he died of uremia. Dr. Klein said that the usual effect of a shock and traumatic whiplash injury such as this on a person who has a chronic but static condition of nephritis is to precipitate an acute attack. In answer to a hypothetical question it was the doctor's opinion that the shock and injury incurred in the collision precipitated the acute phase of his nephritis and definitely contributed to his ultimate death. On cross-examination the doctor testified that none of the three conditions marked on the death certificate was caused by the accident; that while the cause of Glomerulonephritis is not known, it is suspected that it is caused by infection; that nephritis can be caused to flare up by "a lot of things"; that sometimes it is precipitated by operative shock, or hormone activity, or traumatic shock; that nephritis of 25 years standing affected Florian's life expectancy; that the accident did not cause any infection or cause nephritis. He further testified that Florian had a flare-up of nephritis five days after the accident; that he could have had a flare-up at that time without ever having been in an accident ("Anything is possible, yes"); that the flare-up of nephritis could have taken place if Florian had never been in an accident, but that "Usually these sort of things are precipitated by some definite thing. They don't just occur out of a clear sky. Usually they are accounted for." He ruled out the bladder condition (cholecystitis) as a possible cause of the flare-up of nephritis. He did not know what brought on the attack of cholecystitis, and said that no one else knows what brings on that condition. He testified that he attended Florian for the nephritis from which he died from September 16, 1956 to the date of his death; that Florian had an infected throat on September 15 for which he treated him four or five days, but that this situation had been corrected. He further testified that the nephritis Flor-

ian had in his body for years could have been caused to flare up as a result of this accident, and that this particular flare-up "was caused by the accident," by the shock.

■ This case does not fall within the ambit of the cases to which appellant refers. Plaintiff showed with reasonable certainty that the death was caused by an acute attack of nephritis precipitated and caused by traumatic shock. Dr. Klein positively so testified four times. While he did testify generally that there are other causes or suspected causes of nephritis (infection, operative shock, hormone activity, etc.) and that Florian's flare-up could have occurred without an accident, he gave positive and affirmative opinions that the cause in this particular case was the injury and shock. Dr. Klein's positive and affirmative opinion as to causation was not contradicted by his references to other causes which could have produced the same result. Schaefer v. Rechter, Mo.Sup., 290 S.W.2d 118, and cases cited, at pages 123, 124. At no time did Dr. Klein indicate that he considered that any such other possible causes had any relation to this case. In giving this testimony as to other causes he was speaking generally and theoretically, not with this case in mind. He specifically ruled out the throat infection Florian experienced on September 16. Plaintiff through the positive testimony of Dr. Klein, satisfied the requirement that plaintiff prove that the death was caused by the injury, and accordingly, there was no error in overruling defendant's motion for a directed verdict.

■ On another point, however, this judgment must be reversed. Plaintiff's main verdict directing Instruction No. 1 was bad because it submitted to the jury two inconsistent theories of plaintiff's case, on one of which she was entitled to recover and on the other of which she could not recover without disregarding all of the evidence introduced by plaintiff. As heretofore indicated, plaintiff's theory was that when Doggendorf turned the automobile onto the streetcar tracks the streetcar was not moving, but was stopped a half block south of the automobile; that the automobile thereafter stopped at the next intersection north and remained stopped for 10 or 20 seconds before being struck by the streetcar. Defendant's quite different theory was that when Doggendorf turned the automobile onto the streetcar tracks the streetcar was moving at 25 m. p. h. only 100 feet south of Hickory, and that the automobile swerved onto the tracks and stopped directly in the path of the streetcar, too late for the operator to avoid a collision by applying the emergency brakes. The two theories were inconsistent, mutually exclusive and repugnant. If the jury believed the plaintiff's theory it could not at the same time accept the defendant's theory, and vice versa. Nor could the jury believe plaintiff's theory (which is predicated upon a stationary automobile waiting for 10, 20 or more seconds on the tracks) and at the same time accept and believe the theory that the operator of the streetcar could have discovered the automobile "moving towards" the track and in a position of danger in time to have avoided a collision. Furthermore, there was no evidence to support the latter theory. The only evidence that the automobile moved towards the track at any time when the vigilant watch ordinance could possibly have had any application, was that given by the streetcar operator, who testified unequivocally that there was no time to have stopped the streetcar and thereby have avoided a collision after the automobile swerved onto the tracks. No other witness testified that there was any such time or opportunity to avoid a collision, and there was no other evidence that the streetcar was in motion at the time the automobile moved towards the tracks. Nevertheless, in instructing under the vigilant watch ordinance, plaintiff offered and the Court gave Instruction No. 1, which improperly and erroneously combined these two inconsistent and repugnant theories of recovery, as follows:

"The Court instructs the jury that a duly enacted and approved ordinance

of the City of St. Louis provides in substance as follows:

" 'The motorman in charge of every streetcar shall keep a vigilant watch for all vehicles either on the track or moving towards it and on the first appearance of danger to such vehicle the streetcar shall be stopped in the shortest time and space possible.'

"The Court therefore instructs the jury that if you find from the evidence that at all times mentioned in evidence plaintiff was the lawful wife of Florian. Pijut, deceased, and that on October 6, 1956 Florian Pijut was a passenger in an automobile being operated in a northwardly direction on Grand Avenue, and stopped at Hickory Street preparatory to making a left-hand turn onto Hickory Street, in such a manner that the automobile was upon a portion of the northbound streetcar track on Grand Avenue and if you find that the defendant's northbound Grand Avenue streetcar was being operated upon said track to the rear of said automobile and there existed a probability or likelihood of a collision if the operator of said streetcar overtook said automobile and if you find that the defendant's operator, by keeping a vigilant watch for vehicles *either* on the track *or moving towards it,* could have discovered said automobile *either* upon the track, *or moving toward it* and in a position of danger in time to have avoided a collision by stopping said streetcar in the shortest time and space possible and if you find that defendant's operator failed to keep a vigilant watch for vehicles *either* on the track *or moving towards it* and that said streetcar overtook and collided with the said automobile and that the deceased, Florian Pijut, was thereby caused to be injured and if you find that such injuries directly contributed in part to cause his death on the 22nd day of November, 1956, then the Court instructs you that the defendant, St. Louis Public Service Company, was negligent and if you find that such negligence directly caused or if you find that such negligence directly combined and concurred with negligence on the part of the driver of said automobile and thereby directly contributed in part to cause the deceased, Florian Pijut, to be injured in such a manner as to result in his untimely death, then the Court instructs you that in either event plaintiff is entitled to recover and your verdict should be in favor of plaintiff and against the defendant, St. Louis Public Service Company." (Italics ours.)

Under plaintiff's theory there could be a recovery under the vigilant watch ordinance. Under defendant's theory there could be no such recovery. Plaintiff's theory would have been properly submitted by Instruction No. 1 had it omitted the portions which we have italicized. By the inclusion of the italicized Instruction No. 1 plaintiff attempted to engraft upon her distinct and separate theory another and inconsistent theory of recovery (the converse of defendant's defense theory), which was wholly unsupported by any evidence. Although a plaintiff may aid or make out his case by the defendant's evidence, and while a jury may believe part of a witness' testimony and disbelieve another part, nevertheless, in order for plaintiff to make use of the streetcar operator's testimony that the automobile swerved in front of the streetcar while both vehicles were moving, and thereby invoke the "moving towards" theory of liability under the vigilant watch ordinance, plaintiff would be obliged to renounce and discredit her whole theory of the case, and take the position that defendant's testimony (inconsistent with her own) was true. This cannot be permitted. To allow plaintiff in this case this flexibility would be to permit her to obtain a verdict regardless of the manner in which the collision occurred, without any evidence

whatever to support the necessary finding that the streetcar operator could have discovered the automobile which was moving towards the tracks, in time to have avoided a collision by stopping the streetcar, and notwithstanding the jury disbelieved all of plaintiff's testimony. A similar situation confronted this Court in Behen v. St. Louis Transit Co., 186 Mo. 430, 85 S.W. 346, a passenger's action for personal injuries. Plaintiff's testimony showed that the streetcar had stopped and that it was started before the passenger was given sufficient time within which to alight, whereby she was thrown to the ground. Defendant's testimony showed that the passenger attempted to alight before the car had stopped and that as soon as her act indicated that intention the conductor called to her to wait until the car had stopped. There was an ordinance prohibiting conductors from permitting passengers to alight from a moving car. There was no evidence that the conductor allowed the passenger to leave or attempt to leave the car while it was in motion. The instructions given for plaintiff authorized plaintiff to recover (1) if the passenger was attempting to leave the car after it had stopped to allow her to alight, and she was thrown to the ground by its sudden start (plaintiff's pleaded and proved theory), or (2) if she was attempting to leave the car before it stopped and had fallen because it was moving (defendant's theory). Judgment for plaintiff was reversed on the ground that the effect of the giving and refusing of instructions "was to submit two inconsistent theories to the jury, and to authorize them to find for the plaintiff on either one; * * *. Under those instructions the jury was authorized to render a verdict for the plaintiff even if they discredited all the evidence offered by him, and in spite of the allegations in his petition. That was a serious error, for which the judgment must be reversed." 85 S.W. loc. cit. 350. And see Blue v. Supreme Camp of American Woodmen, Mo.App., 135 S.W.2d 373, and cases cited, loc. cit.

377. The same situation obtains in the present appeal, and the same result must follow.

■ In redrafting Instruction No. 1 on a retrial the italicized language should be omitted. This will eliminate the improper blending and admixture of the two inconsistent and repugnant theories of the facts, which could have no other effect than to confuse and mislead the jury. Other language that is improper and confusing, and which should be omitted on a redraft, is the reference to the concurring negligence of the driver of the automobile. The instruction fails to submit in what respect the driver of the automobile was negligent. On plaintiff's theory of the facts it is difficult if not impossible to conceive any basis upon which the driver of the automobile could be convicted of negligence. The introduction of the idea of concurring negligence without any hypothesis of facts upon which its submission could have been predicated, and without any conceivable foundation in fact for such a finding, added to the general confusion of the instruction.

Appellant has properly preserved for review two other points upon the basis of which it seeks a reversal of the judgment for procedural reasons: (1) that in empaneling the jury counsel for plaintiff improperly undertook to pledge and bind the jurors to return a verdict for $25,000 if they found the issues for plaintiff, and (2) that the court erred in refusing to give defendant's offered converse instruction, directed at plaintiff's submission of the case on the vigilant watch theory. Since the judgment must be reversed for error in Instruction No. 1 and since these complications need not and likely will not arise on a retrial, we find it unprofitable to further extend this opinion in an analysis of these procedural questions.

Accordingly, the judgment is reversed and the cause is remanded for a new trial.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.