Barbara PIJUT, Appellant,

v.

ST. LOUIS PUBLIC SERVICE COMPANY,
a Corporation, Respondent.

No. 48612.

Supreme Court of Missouri,
Division No. 1.

Nov. 13, 1961.

Barnhart & Sommers and Don B. Sommers and David G. Dempsey, St. Louis, for appellant.

William M. Corrigan, St. Louis, for respondent.

COIL, Commissioner.

Barbara Pijut, plaintiff below, sought $25,000 as damages for the alleged wrongful death of her husband on October 6, 1956, who she averred died as the result of a collision between the automobile in which he was riding and defendant's streetcar. A jury found for defendant, and plaintiff on appeal contends that the trial court erred in giving instruction 4. An opinion on a prior appeal of this case is reported at 330 S.W. 2d 747.

It is undisputed that plaintiff's decedent was a passenger in an automobile, driven by Charles Doggendorf, waiting to make a left turn off Grand Avenue onto Hickory Street, when it was struck in the rear by the front of defendant's northbound streetcar.

There were north and southbound tracks in the approximate center of Grand. Caroline Street intersects the east side of Grand. At the south curb of Caroline was a stop sign for northbound Grand traffic. Beginning at the south curb of Caroline and immediately east of the east rail of the northbound track and extending southwardly was a loading zone for northbound streetcar passengers. Hickory is two blocks north of Caroline (one short and one ordinary block) and Grand is downgrade from south to north from Caroline to Hickory.

The facts and circumstances under which the respective vehicles arrived at the collision point were in dispute. Plaintiff's version was that the northbound Doggendorf car came to a stop on Grand at Caroline; that the collision streetcar was then stopped at the south curb of Caroline taking on passengers; that the streetcar was stationary when Doggendorf proceeded; that within the first short block north of Caroline he went onto the northbound track and northwardly to the south curb of Hickory where he came to a stop with the left side of his automobile near the center line of Grand and gave an arm signal for a left turn; that after he had remained in that stopped position for as long as twenty seconds the streetcar ran into the rear of the automobile.

Plaintiff submitted her case under the St. Louis Vigilant Watch Ordinance, directing a verdict in the event the jury found that defendant's operator failed to keep a vigilant lookout for vehicles on the track when by so doing he could have discovered the automobile on the track and in a position of danger in time to have avoided colliding with it by stopping said streetcar in the shortest time and space possible.

Defendant's evidence was to the effect that its streetcar was stopped at the stop sign at the south curb of Caroline where passengers alighted and boarded; that as it proceeded north and when it had reached a place about 100 feet south of Hickory and was traveling 25 to 30 miles per hour its operator saw an automobile going 25 to 30 miles per hour (which was in fact the Doggendorf automobile) "cut in on me very sharply"; that at the time the automobile cut in, it was about two feet to the right of the streetcar and the operator saw it through the front side door; that the automobile's front end could have been a little ahead or a little behind the front of the streetcar but it was approximately "even" and it was going faster than the streetcar; that at the time defendant's operator saw the automobile cutting in he immediately threw the car into emergency, that is, applied full brakes; that the automobile moved to a position in front of the streetcar, turned due north, proceeded a short distance, and made an unsignaled stop at the south curb of Hickory; that the overhang of the left side of the streetcar struck the left rear of the stationary automobile; that the streetcar had been slowed to one to five miles per hour at the time of the collision and it would have taken 100 to 150 feet including reaction time to have stopped the streetcar under the existing conditions at a speed of 25 to 30 miles per hour.

The St. Louis Vigilant Watch Ordinance read in evidence was: "Vigilant watch to be kept. The conductor, motorman, gripman, driver, or any other person in charge of each car shall keep vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible."

Defendant's verdict-directing instruction 4 was: "The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in the evidence Mr. O'Neal was operating the streetcar mentioned in the evidence northwardly along Grand avenue, and that as said streetcar was approaching Hickory street it arrived at a point approximately 100 feet south of Hickory street traveling approximately 25 to 30 miles per hour, and if you find that at this time the automobile driven by Charles Doggendorf was being operated with the front end of said automobile approximately even with the front of the streetcar and approximately two feet to the right hand side thereof at a greater speed than the streetcar, and if you find that said automobile was driven from the position set out above so as to sharply cut to the left (west) and directly in front of and into the path of said moving streetcar without any sign or signal of the auto driver's intention so to do, and that said automobile then continued on northwardly on the northbound streetcar tracks until such time as said automobile neared Hickory street, and if you find that said automobile was then brought to a sudden stop facing in a northwestwardly direction at or near the south curbline of Hickory street without any sign or signal of the auto driver's intention so to do, and if you find that at the time when the said automobile started to cut to the left in front of and into the path of the streetcar Mr. O'Neal applied the emergency braking power of said streetcar in an attempt to stop said streetcar in the shortest time and space possible under the conditions then and there existing, and if you find that the speed of the streetcar was reduced to approximately 1 to 5 miles per hour at the time of the collision, and that Mr. O'Neal, with the means and appliances at hand could not fully stop said streetcar and thereby avoid colliding with said automobile, then in that event, the plaintiff, Mrs. Pijut, is not entitled to recover and your verdict should be in favor of the defendant."

■ Plaintiff contends that instruction 4 was erroneous because it failed to require the jury to find that the streetcar operator exercised the requisite degree of care in "keeping a lookout prior to the moment

when he actually saw the Doggendorf automobile for the first time." Plaintiff correctly asserts that it was defendant's duty not only to keep a vigilant watch for vehicles on the streetcar track but as well for vehicles moving toward the track and on the first appearance of danger to any such vehicle to stop its streetcar in the shortest time and space possible. Thus, says plaintiff, the jury properly could not have found for defendant on the theory submitted unless as a prerequisite it was required to find that the streetcar operator not only (in the exercise of requisite care) could not have stopped the streetcar *after* he saw the automobile approaching the track but it should have been required to find also that the operator exercised requisite care to have seen the automobile when there "was the first appearance of danger" to it from the continued movement of the streetcar. In other words, plaintiff contends that defendant's duty was not only to act after its operator saw the automobile moving toward the track but that it had the duty also to have exercised commensurate care to have seen the automobile at the time it first was in a position when it appeared or should have appeared to be in danger from the streetcar's forward movement.

We agree that a verdict-directing instruction, whether it be plaintiff's or defendant's, must contain a submission of all the essential issues which are prerequisite to a verdict for the submitting party and thus even though plaintiff's recovery instruction in this case hypothesized defendant's duty only after the automobile was on the track, defendant having elected to hypothesize the facts under his theory rather than to converse plaintiff's submission, its verdict-directing instruction needed to include the requirement suggested by plaintiff. See Thomas v. Kimsey, Mo., 322 S.W.2d 754, 757[1–3]. The trouble with plaintiff's position, as we see it, is that her premise that instruction 4 does not contain the requirement in question is fallacious.

Instruction 4 required the jury to find in part "that at the time when the said automobile *started* to cut to the left in front of and into the path of the streetcar Mr. O'Neal applied the emergency braking power of said streetcar in an attempt to stop said streetcar in the shortest time and space possible under the conditions then and there existing," etc. (Our italics.) The foregoing, under the evidence in this case, effectively required the jury to find prerequisite to a defendant's verdict that its operator in fact *saw* the Doggendorf automobile at the first instant its presence and position could have presented an appearance that it was endangered by the continued forward movement of the streetcar. For it is apparent under the evidence that so long as the automobile traveled northwardly parallel to the streetcar there could have been no appearance of danger to it. The "first appearance of danger" to the automobile could have occurred only at the instant the automobile "started to cut to the left in front of and into the path of the streetcar" as hypothesized in the instruction. The phrase "started to cut" is synonymous with "began to cut" and, if the jury found that defendant's operator actually saw the Doggendorf automobile at the time it "began" to move toward the track, it necessarily found that the operator saw it on the "first appearance of danger * * * to" it.

Plaintiff contends that instruction 4 is erroneous for the further reason that it is in reality a sole cause instruction and, as such, must have negatived, but did not, defendant's negligence submitted in plaintiff's verdict-directing instruction. We shall not pause to determine whether 4 is a sole cause instruction; for if it is or if, in certain respects, it is in the nature of a sole cause instruction, and, in either event, it was necessary for it to have negatived defendant's negligence as hypothesized by plaintiff, instruction 4 did, in fact, negative defendant's negligence submitted in plaintiff's instruction. As heretofore noted, plaintiff's instruction 1 submitted defendant's negligence in violating the Vigilant Watch Ordinance in failing to have dis-

covered the Doggendorf automobile "upon. the track" in time to have avoided the collision by stopping the streetcar in the shortest time and space possible. Instruction 4 hypothesized a fact situation which, if so found by the jury, negatived defendant's negligence submitted in instruction 1 because instruction 4 hypothesized facts in evidence which, if true, destroyed plaintiff's case on the factual theory under which she had submitted it. Silver v. Westlake, Mo., 248 S.W.2d 628, 633[4].

The trial court did not err in giving instruction 4 for either of the reasons assigned by plaintiff, and the judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.