**Mattie M. HARRIS, Plaintiff-Appellant,**

v.

**James WASHINGTON, Defendant-Respondent.**

No. 45856.

Missouri Court of Appeals, Eastern District, Division One.

June 21, 1983.

William R. Hirsch, Hirsch & Rauscher, St. Louis, for plaintiff-appellant.

Joseph F. Mueller, Denis C. Burns, St. Louis, for defendant-respondent.

KAROHL, Judge.

Plaintiff-appellant Mattie Harris, age 55, brought an action against defendant-respondent James Washington, Edward Jefferson, and her automobile insurer, Allstate Insurance Company, for personal injuries resulting from an automobile collision. The jury found for plaintiff, awarding her $30,-000 damages from both individual defendants, found in plaintiff's favor against Allstate, and apportioned fault between Washington and Jefferson. Mr. Jefferson was not represented at trial and is not part of this appeal. After defendant Washington and Allstate brought separate motions for new trial, the trial court ordered a new trial on the issue of damages alone. The court found that plaintiff failed to prove a causal connection between the August 16, 1978 accident and a hospitalization in January, 1979. Allstate then paid $10,000 to plaintiff as the limit of her uninsured motorist coverage, and is no longer a party. Plaintiff appealed the trial court's order granting a new trial on the issue of damages.

On August 16, 1978, plaintiff was in her car, stopped at an intersection, when two cars in the cross-street collided in front of her. The cars, one driven by defendant Washington, the other by Mr. Jefferson, slid into plaintiff's car, pushing it onto a sidewalk and shattering the windshield. Plaintiff was taken to a hospital with her mouth bleeding from glass fragments. She

was given a temporary neck collar, x-rays, and pain pills.

The next day plaintiff complained of soreness in her neck, shoulders and back. She went to see Dr. David Kantor, who examined her neck and shoulders, x-rayed her neck, shoulder and lower back, and prescribed muscle relaxants. She continued to wear the neck collar for five weeks.

Immediately after the accident, plaintiff remained home from work for fifteen days. After returning to work, she had an unrelated accident and injured her right shoulder. Plaintiff remained under Dr. Kantor's care, making constant office visits. After initial complaints of lower back pain after the accident, plaintiff did not complain of lower back pain from August 31, 1978 to January 11, 1979.

On January 28, 1979, plaintiff entered the hospital and had surgery on her lower back. She left the hospital on February 22, 1979. Plaintiff stated at trial that she still had problems with her back, wore a steel brace and had a loss of feeling in part of her left leg, causing her to limp. She presented evidence of hospital, drug and doctor bills totalling over $6,000.

Dr. Kantor, the treating physician, testified by deposition. His initial diagnosis after the accident was cervical and lumbar (lower back) sprain secondary to trauma, and symptomatic dysfunction of the left shoulder (a strain). The first x-rays he took showed increased sclerosis of the fourth lumbar vertebra, suggestive of either degenerative or osteoblastic disease. The doctor described this as a creation of a new bone in an area where there was no bone or a greater amount of bone than there should have been.

Dr. Kantor testified that the sclerosis and osteoblastic disease was not caused by the collision but felt that because of the accident, the pre-existing abnormality became symptomatic and painful.

Dr. Kantor admitted plaintiff to the hospital in January for evaluation of osteoblastic lesion of the lumbar spine, to rule out Paget's disease, and for symptomatic dys-

function of the dorsal spine secondary to trauma. Plaintiff's back surgery involved a biopsy of the fourth lumbar vertebra.

On cross-examination, Dr. Kantor acknowledged that plaintiff told him at the first examination that approximately one year prior, she had an accident that injured her lower back. At the time of the initial examination she did not complain of lower back pain. Until the surgery, plaintiff received no treatment for her lower back except for muscle relaxants. From August 31, 1978 to January 11, 1979, Dr. Kantor found no muscle spasticity in plaintiff's lower back.

Dr. Kantor's final diagnosis after the hospitalization was osteoarthritis of the lumbar spine, possible metastatic carcinoma, degenerative arthritis and dorsal symptomatic dysfunction. He diagnosed the osteoarthritis, degenerative arthritis of the lumbar area, as a result of the wear and tear of getting older. Dr. Kantor admitted that the surgery did not come about as a result of a traumatic injury, although he stated that the collision aggravated the pre-existing condition to the lower back. Finally, Dr. Kantor was asked on cross-examination, "After the hospitalization had been undergone and the biopsy was taken, you are of the opinion now that the abnormality was not directly related to that automobile collision of August 16, 1978. Is that correct?" Dr. Kantor answered, "Yes."

Defendant's medical expert testified that there was no causal connection between the accident and plaintiff's lower back problems. Defendant made a motion in limine and a continuing objection at trial to anything dealing with the hospital stay of January, 1979, treatment received, any surgical procedure which occurred during the hospitalization, the medical expenses in connection with the hospitalization, and any wage loss associated with the hospitalization. Defendant argued that that evidence was not causally connected to the accident. The trial court overruled the objection, and defendant offered withdrawal instructions which sought to exclude from the jury's consideration any reference to the hospital-

ization or medical bills associated with the hospitalization. The court refused to give the withdrawal instructions.

The trial court granted the new trial on damages on the grounds that: (1) the court should have given defendant's offered withdrawal instruction, as the evidence failed to establish any causal connection between the hospitalization and the bills incurred and the accident; (2) the refused withdrawal instruction should have been given to clarify the issues in the jury's assessment of damages; (3) the verdict was excessive in that it must be presumed based in part on the improperly admitted evidence of the hospitalization and the bills incurred; and (4) that the court should have granted defendant's motion in limine and should have restricted any evidence from Dr. Kantor's deposition relative to the hospitalization as there was no causal relationship between the accident and the hospitalization.

■ The granting of a new trial because of insufficient evidence to submit an issue to the jury is not an exercise of judicial discretion, but rather is a determination of a legal question. *Bayne v. Jenkins,* 593 S.W.2d 519, 530 (Mo. banc 1980). The trial court has broad discretion, however, for sustaining a motion for new trial on the ground that the amount of the verdict was excessive, as this is the equivalent of granting a new trial on the ground that the verdict is against the weight of the evidence. *Bierman v. Langston,* 304 S.W.2d 865, 867 (Mo.1957). If any of the reasons assigned for granting a new trial is proper, the action of the trial court should be affirmed. *Davis v. Perkins,* 512 S.W.2d 868, 870 (Mo.App.1974).

If the trial court did not abuse its discretion in granting defendant a new trial on damages on the discretionary ground that the verdict was excessive, it is unnecessary to rule on whether the court erred as a matter of law in granting defendant a new trial because evidence of plaintiff's hospitalization was improperly admitted. *Davis v. Perkins,* 512 S.W.2d at 871.

■ In reviewing the order here, we look at all reasonable inferences favorable to the trial court's ruling unless there has been a clear abuse of discretion in granting the motion. *Reed Stenhouse, Inc. v. Portnoy,* 642 S.W.2d 947, 950 (Mo.App.1982).

■ The trial court ruled that the verdict was excessive, in that the jury presumably considered the evidence of the hospitalization and associated bills, and such evidence was inadmissible as not causally related to the accident. To make a submissible case, plaintiff must show that defendant's negligence was the proximate cause of her injuries. *Pihsiou Hsu v. Mound City Yellow Cab Co.,* 624 S.W.2d 61, 63 (Mo.App.1981). Plaintiff has the burden to show by substantial evidence, the causal connection between defendant's negligence and the alleged injuries. *DeMoulin v. Kissir,* 446 S.W.2d 162, 165 (Mo.App.1969); *Moore v. Glasgow,* 366 S.W.2d 475, 483 (Mo.App. 1963); *Franklin v. Kansas City Public Service Co.,* 239 Mo.App. 151, 186 S.W.2d 546, 549 (Mo.App.1945).

■ Like other facts, causation may be shown by direct or circumstantial evidence. In personal injury actions, causation is often proven by a medical expert's opinion that the accident caused plaintiff's physical injury. *DeMoulin v. Kissir,* 446 S.W.2d at 165. As the present action does not involve a sudden onset, visible injury, or an injury that as a matter of common knowledge follows the act, *Handshy v. Hasty,* 444 S.W.2d 48, 52 (Mo.App.1969), some expert medical testimony combined with other evidence tending to show with a reasonable certainty that the accident caused the injury is necessary. *See Pihsiou Hsu v. Mound City Yellow Cab Co.,* 624 S.W.2d 61, 63 (Mo.App.1981); *Immekus v. Quigg,* 406 S.W.2d 298, 303–04 (Mo.App.1966). In addition, items of special damages, such as expenses for medical services, *Marshall v. Brown,* 608 S.W.2d 105, 108 (Mo.App.1980), must be supported by substantial evidence that they were reasonable and that the services were reasonably necessary to treat injuries sustained as a result of the acci-

dent. *Briggs v. Baker,* 631 S.W.2d 948, 952 (Mo.App.1982).

■ In the instant case, plaintiff's doctor testified that there were various reasons for admitting plaintiff into the hospital, one of which, dorsal symptomatic dysfunction, could have been related to the accident. Dr. Kantor was not asked on direct examination to express an opinion of causation after the surgery, however. Thus plaintiff never established the requisite causal connection between the hospitalization and the accident. Possible diagnosis on admission is not probative of causation when, after surgery and tests, a different final diagnosis results.

■ Although plaintiff argued that the accident aggravated her pre-existing lower back condition, she would only be entitled to recover upon proof that the aggravation was caused by defendant's negligence, and she could only recover such damages as proximately result from the activation of a dormant or latent disease. *Immekus v. Quigg,* 406 S.W.2d at 302. Plaintiff has failed, by her own evidence, to establish anything other than an admitting diagnosis, which does not prove causation.

■ This is not a case where the medical testimony is inconclusive, indicating that an accident "could have" caused the hospitalization, or where there was only a possibility of causation. *See Immekus v. Quigg,* 406 S.W.2d 298 (Mo.App.1966). Here, Dr. Kantor's positive testimony firmly established that the accident was not the cause of plaintiff's hospitalization. Defendant's medical expert, who examined plaintiff, agreed. Plaintiff is bound by the uncontradicted testimony of her own expert witness. *Silberstein v. Berwald,* 460 S.W.2d 707, 710 (Mo.1970); *Racer v. Utterman,* 629 S.W.2d 387, 398 (Mo.App.1981). *See Bertram v. Wunning,* 385 S.W.2d 803 (Mo.App.1965), where the plaintiff's medical expert stated on cross-examination that he could not state as a reasonable medical certainty that the accident in question caused the plaintiff's hernia. The court found error in the trial court's refusal to give a withdrawal instruction.

■ Since plaintiff's expert refuted her theory of causation, the trial court correctly ruled in the motion for new trial that it should have given defendant's withdrawal instruction. *Bertram v. Wunning,* 385 S.W.2d at 807; *Franklin v. Kansas City Public Service Co.,* 186 S.W.2d at 549. Where there is evidence in the case which might raise a false issue, it is reversible error for the trial court to fail to give an instruction withdrawing such evidence from the jury's consideration. *Womack v. Crescent Metal Products, Inc.,* 539 S.W.2d 481, 484 (Mo.App.1976). The evidence concerning plaintiff's hospitalization, shown not to be directly caused by the accident, should have been withdrawn from the jury. *DeMoulin v. Kissir,* 446 S.W.2d 162, 166 (Mo.App.1969).

■ As a consequence, the trial court did not abuse its discretion in ordering a new trial on the ground of excessiveness. *Statler v. St. Louis Arena Corp.,* 388 S.W.2d 833, 838 (Mo.1965); *Bierman v. Langston,* 304 S.W.2d 865, 868 (Mo.1957); *Davis v. Perkins,* 512 S.W.2d 868, 874 (Mo.App.1974); *Moore v. Glasgow,* 366 S.W.2d 475, 483 (Mo.App.1963). In considering and ruling on defendant's complaint of excessiveness in the motion for new trial, the trial court properly disregarded the testimony pertaining to the unconnected hospitalization and bills incurred. *Moore v. Glasgow,* 366 S.W.2d at 483. We find no abuse of discretion in the trial court's finding that the $30,000 verdict was excessive, as we assume that the jury considered the evidence of the hospitalization and bills in assessing damages, and further, that such evidence augmented the damages. *Immekus v. Quigg,* 406 S.W.2d at 304; *Bertram v. Wunning,* 385 S.W.2d at 807; *Franklin v. Kansas City Public Service Co.,* 186 S.W.2d at 549.

Plaintiff has thus failed to carry her burden of proving that defendant's negligence was the proximate cause of her hospitalization in January, 1979. We affirm the trial court's order for a new trial on the issue of

damages on the ground that the verdict was excessive.

SIMON, P.J., and STEPHAN, J., concur.