Kevin **HAFFEY** and Diane Lewis, Appellants,

v.

**GENERAC PORTABLE PRODUCTS, L.L.C.,** Respondent.

No. 26437.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 22, 2005.

Stuart H. King & W. Craig Hosmer, McDonald, Hosmer, King & Royce, P.C., Springfield, for Appellants.

Nicholas Nagrich & Warford B. Johnson, III, Wallace, Saunders, Austin, Brown & Enochs, Springfield, for Respondent.

ROBERT S. BARNEY, Judge.

Appellants Kevin Haffey and Diane Lewis (variously "Plaintiff," "Plaintiffs," "Haffey," or "Lewis") filed an action in the Circuit Court of Greene County, Missouri, against Respondents Generac Portable Products, L.L.C. ("Generac") and Sears Roebuck & Company ("Sears") claiming damages to their building resulting from a fire on or about June 28, 2000, which Plaintiffs assert was caused by a defective and unreasonably dangerous 10,000 watt gas-powered generator manufactured by Generac. Sears was later dismissed from the litigation and the cause against Generac was tried before a jury. The jury returned its verdict in favor of Generac and judgment was entered in accordance with the jury's verdict. Plaintiffs now raise three points of trial court error involving the trial court's failure to give

three requested withdrawal instructions to the jury, as more fully set out below. We affirm.

The record shows that in 1993 Haffey purchased 42 acres of real property which was surrounded by land owned by the United States Forest Service. He later built a metal building on the property which was approximately 30 feet by 40 feet in size. In July of 1999, Haffey and Lewis met and thereafter decided to get married. By the following year, Haffey had altered the metal building such that approximately two-thirds of the building was used as a shop and the remainder was converted to an apartment for Plaintiffs; however, electric services were not available to the building because Haffey had not yet obtained a permit from the United States Forest Service to extend electrical lines through the surrounding national forest. Therefore, in order to provide electrical power to the building, Haffey purchased a 10,000 watt Sears Craftsman gas-powered generator. Haffey placed the generator on a concrete slab located on the west side of the building and he partially enclosed the generator with a metal roof and two walls. For ventilation purposes, he constructed the two walls such that the lower two to three feet were open to allow air to circulate around the generator.

On June 28, 2000, Haffey put gasoline into the generator and left the property. Later, Lewis returned to the property. She started the generator, let it warm up and then plugged in the electrical cord which powered the lights to the apartment portion of the building. About ten to fifteen minutes later, Lewis heard a "wooshing, crinkle sound coming from behind us outside ..." and the lights in the apartment began to flicker. Lewis went outside and discovered that the concrete pad and the west wall of the building were engulfed in flames. As a result of the fire, the building was completely destroyed and virtually all of its contents were incinerated.

Thereafter, Haffey and Lewis filed suit against Generac and Sears on theories of strict products liability, negligence, and breach of warranty.

During the trial, Plaintiffs offered two expert witnesses, Thomas Evans ("Evans"), a fire investigator, and Alan McGee ("McGee"), an electrical engineer. On direct examination Evans testified that the only fuel source which could have started the fire was the gasoline within the tank on top of the generator. He related that the point of origin of the fire was not at all consistent with an electrical fire. Further, he was able to exclude the propane system, which consisted of a propane tank and piping connected, as a fuel source to the refrigerator and water heater in the apartment.

McGee testified that he inspected the wiring system of the burned building on July 13, 2000, and opined the electrical system of the building did not cause the fire.[1]

At trial, Haffey acknowledged that the product manual advised against "overfilling" the tank located on top of the generator and that he was careful to leave at least half an inch of space below the top of the tank when filling the generator with gasoline.

At the close of Plaintiffs' case, Generac rested without offering any evidence. It is clear from our review of the record that during trial Generac vigorously cross-examined Plaintiffs' witnesses, pointing out

---

1. Other, pertinent, evidentiary information will be developed in our discussion of Plaintiffs' points relied on.

inconsistencies between deposition testimony and testimony at trial. In particular, Generac elicited testimony tending to show, or infer, that Haffey used the generator contrary to the operator's manual by: (1) having "overfilled" the gas tank located on top of the generator; (2) placing the generator too close to the wall of the building preventing proper ventilation of the heat, gasoline, and attendant vapors which were emitted from the generator, thereby igniting a fire; and (3) leaving the portable generator in its original wooden crate when placing it on the concrete slab. Additionally, while Generac did not dispute that the fire originated with the 10,000 watt generator, it elicited cross-examination evidence tending to show that Plaintiffs had not proven an actual defect making the generator unreasonably dangerous when put to a reasonably anticipated use.

When Generac rested its case without presenting any evidence, Plaintiffs tendered three withdrawal instructions to the trial court which addressed issues they believed should not be presented to the jury. Instruction Number "A" sought the withdrawal of the issue of whether the propane system in the building caused or contributed to the cause of the fire; Instruction Number "B" sought the withdrawal of the issue of whether the electrical system of the building caused or contributed to the cause of the fire; and Instruction Number "C" sought the withdrawal of the issue of whether Haffey overfilled the gasoline tank on the generator. All three withdrawal instructions were refused by the trial court.

■ Plaintiffs were permitted to submit a verdict directing instruction based on MAI 25.04, Strict Liability–Product Defect (6th Ed.).[2] As previously related, the jury returned its verdict in favor of Generac.

■ As a general rule, "plaintiff has the burden of proof and a verdict for defendant need not be supported by any evidence." *Feick v. Fenlon,* 939 S.W.2d 537, 538 (Mo.App.1997). " 'Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it.' " *Stiff v. Stiff,* 989 S.W.2d 623, 628 (Mo.App.1999) (quoting *Brown v. Mustion,* 884 S.W.2d 365, 369 (Mo.App.1994)).

■ "Evidence in any suit should be relevant; and evidence that throws no light on the controversy should be excluded as it tends to confuse the issues and operate to prejudice a party before a jury." *Switzer v. Switzer,* 373 S.W.2d 930, 939 (Mo.1964). "The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence." *Morehouse v. Behlmann Pontiac–GMC Truck Serv., Inc.,* 31 S.W.3d 55, 60 (Mo.App.2000).

■ "As a general rule, a witness may be asked any questions on cross-examination that tend to test accuracy, veracity, or credibility, or shake the witness' credit by injuring his or her character." *Long v. St. John's Reg'l Health Ctr.,* 98 S.W.3d 601, 606 (Mo.App.2003). "The trial court may not exclude relevant and material facts simply because counsel seeks to elicit such facts on cross-examination." *Id.*

■ "[I]n situations involving the cross-examination of expert witnesses, par-

---

2. "The essential elements of a strict product liability claim are (1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." *Lay v. P & G Health Care, Inc.,* 37 S.W.3d 310, 325 (Mo. App.2000).

ties are to be given wide latitude 'to test qualifications, credibility, skill or knowledge, and value and accuracy of opinion.'" *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 60 (Mo. banc 1999) (citation omitted). "Where a witness' prior inconsistent statement relates specifically to a paramount issue in the case, the trial court does not have discretion to prevent the impeachment of the witness through use of that statement." *Long*, 98 S.W.3d at 606. In utilizing such statements, "[t]he form of the prior inconsistent statement does not matter." *Id.* "In particular, a prior inconsistent statement of a witness who is available for cross-examination may be used as substantive evidence in a civil trial." *Id.; Phillips v. Am. Motorist Ins. Co.*, 996 S.W.2d 584, 593 (Mo.App.1999).

■■■■ "This [C]ourt defers to the jury's role of judging the weight of the evidence and the credibility of witnesses." *Bland v. IMCO Recycling, Inc.*, 67 S.W.3d 673, 682 (Mo.App.2002). "The jury is the sole judge of the credibility of the witnesses and the weight and value of their testimony and may believe or disbelieve any portion of that testimony." *Id.*

> Withdrawal instructions may be given when evidence on an issue has been received, but there is inadequate proof for submission of the issue to the jury; when there is evidence presented which might mislead the jury in its consideration of the case as pleaded and submitted; when there is evidence presented directed to an issue that is abandoned; or when there is evidence of such character that might easily raise a false issue.

*Stevens v. Craft*, 956 S.W.2d 351, 355 (Mo. App.1997) (internal citations omitted). "A withdrawal instruction is also appropriate in clarifying damages for the jury." *Id.* " 'While MAI 34.02 is called a "withdrawal" instruction, its use is not limited to

withdrawing evidence which is accidently or improperly admitted. It is intended rather to clarify what the jury is to consider in assessing damages.'" *Id.* (quoting MAI 34.02, Committee Comment).

■■■■ "Determining whether to give a withdrawal instruction is a matter that is within the trial court's discretion." *Id.* "An abuse of discretion occurs only when a trial court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Id.* "There is no abuse of discretion if reasonable persons could differ about the propriety of the trial court's decision." *Stevens*, 956 S.W.2d at 355.

■■■■ Turning our attention to Point One, Plaintiffs contend the trial court erred by not giving the following withdrawal instruction, Instruction Number "A," which reads as follows:

> The issue of whether the propane system in Plaintiffs' building caused or contributed to the cause of the fire is withdrawn from the case and you are not to consider such issue in arriving at your verdict.

Plaintiffs maintain "[t]he only evidence during trial established that the propane system was not the fuel source for the fire." In support of that argument, Plaintiffs point to Evans's testimony that he had examined the propane system and was able to exclude it as a potential source of fuel for the fire. This was supported by Evans's findings that after the fire the propane lines were still intact and that it was not until after the fire began that the propane tank exploded.

Plaintiffs cite *Harris v. Washington*, 654 S.W.2d 303, 307 (Mo.App.1983), and similar cases, for the proposition that where there is evidence in a case which might

raise a false issue, it is reversible error for the trial court to fail to give an instruction withdrawing such evidence from the jury's consideration. Plaintiffs argue that the "nature and extent of Generac's questions and argument regarding the propane system was reasonably likely to confuse or mislead the jury that the propane system was or could have been leaking and did or could have led to the fire."

It is unclear to this Court exactly how Generac's counsel may have confused or misled the jury. Clearly it was within Generac's procedural right to cross-examine all of Plaintiffs' witnesses to test their respective "accuracy, veracity or credibility . . . ." *Long*, 98 S.W.3d at 606.

After reviewing the twenty-three pages of Generac's closing argument, it is clear the thrust of the closing argument dealt with evidence elicited during cross-examination tending to show misuse of the generator by Plaintiff Haffey.[3] Only two-thirds of *one* page of closing argument dealt with the issue of the propane system. It is difficult to perceive how a jury may have been misled or confused by this issue, particularly in light of evidence elicited during cross-examination tending to show misuse of the generator by Plaintiff Haffey. Based on the foregoing, we cannot say that the trial court abused its discretion by its refusal to authorize the giving of withdrawal Instruction Number "A." *Heifner v. Synergy Gas Corp.*, 883 S.W.2d 29, 34 (Mo.App.1994). We find no reversible error. *Weisbach v. Vargas*, 656 S.W.2d 797, 800 (Mo.App.1983). Point denied.

■ In their second point, Plaintiffs contend the trial court erred by refusing to give withdrawal Instruction Number "B," which states that:

The issue of whether the electrical system in Plaintiffs building caused or contributed to the cause of the fire is withdrawn from the case and you are not to consider such issue in arriving at your verdict.

As best we discern, the thrust of Plaintiffs' argument appears to be that there "was no evidence under which the wiring system could have started the fire or that such circumstances existed at the time of the fire." Plaintiffs submit, "[f]rom opening statement through the questioning of the witnesses to closing arguments, Generac put at issue the wiring system of the building as an alternative cause of the fire." Again, citing *Harris*, 654 S.W.2d at 307, and similar cases, Plaintiffs maintain Generac raised a false issue which should have been withdrawn from the jury's consideration.

Once more we observe that Generac properly exercised its right to cross-examine Plaintiffs' witnesses regarding their factual observations and conclusions. "The trial court may not exclude relevant and material facts simply because counsel seeks to elicit such facts on cross-examination." *Long*, 98 S.W.3d at 606. Furthermore, it is only logical that in a fire involving a building which uses electricity as energy to operate lights and appliances, cross-examination questions would be posed regarding electricity as a possible heat source for the ignition of the fire. Given the circumstances of the case, it is difficult for this Court to discern that this was a spurious issue.

Additionally, the fact that Plaintiffs submitted evidence tending to show that electrical wiring was not involved in the fire does not necessarily preclude the jury from making its own credibility, weight, and value determination regarding Plain-

---

3. In this connection, *see* discussion in Plaintiffs' third point.

tiffs' witnesses. *See Bland,* 67 S.W.3d at 682. Indeed, the jury may believe or disbelieve any portion of submitted testimony. *Id.*

We also note, in retrospect, that in closing argument Generac's counsel set out: "I've never tried to say there was an electrical cause to this fire, okay?" Counsel also related that "[t]here's no issue regarding number one, the ignition source. Their own expert, Mr. McGee, stated, I think the heat source or the ignition source was the generator, and that's fine. I can live with that." Given the foregoing, we hold the trial court's refusal of withdrawal Instruction Number "B" was not an abuse of discretion nor was it reversible error. Point denied. *See Weisbach,* 656 S.W.2d at 800.

▇ In their third and final point, Plaintiffs maintain the trial court also erred by not giving their tendered withdrawal Instruction Number "C." Instruction Number "C" reads as follows:

The issue of whether Kevin Haffey overfilled the gasoline tank on the generator is withdrawn from the case and you are not to consider such issue in arriving at your verdict.

In conformity with their other two points, Plaintiffs maintain that the evidence presented and the arguments made by Generac's counsel were sufficient to create a reasonable likelihood that the jury would be "confused or misled into finding that Haffey overfilled the gas tank of the generator and/or that the overfilling of the gas tank caused or contributed to cause the fire yet there was no evidence to support such findings."

Generac counters, however, that Plaintiffs premised their argument, in part, on the false assumption that there was no evidence by which the jury could find that Haffey overfilled the tank. Generac asserts there was evidence that Haffey did, indeed, overfill the gas tank of the portable generator and that in doing so he inadvertently led to the cause of the fire. Again, we note that the "jury is the sole judge of the credibility of the witnesses and the weight and value of their testimony and may believe or disbelieve any portion of that testimony." *Bland,* 67 S.W.3d at 682.

We observe that during trial, Evans, who testified for Plaintiffs, was asked whether or not he had information that Haffey had filled the gas tank to the top of the container, an action which would have been contrary to the warning contained in the generator's product manual. Evans denied that Haffey had informed him that he had filled the gas tank all the way to the top. Generac's counsel then refreshed Evans's recollection as to his previous deposition testimony as follows:

I'm on page 18, Line 17, talking about the tank on the generator. When you were told the tank was filled, were you told it was filled all the way to the top? Were you told it was filled three-quarters full? What do you remember? Your answer was: 'I really don't remember. I—it might be in my report, I don't know. For some reason, I think he told me—I think it was Kevin Haffey—told me that he'd filled it all the way up, but I don't know.'

Additionally, the record shows Haffey testified on cross-examination that he was the last person to fill the fuel tank before the fire and that he filled the tank "fairly full." Lewis also recalled that in her deposition testimony she said "we had a barrel of rags out in the front of the shop" for the purpose of wiping up gas and she acknowledged having previously used the rags to wipe up gas. Lewis also acknowledged that on the day of the fire Haffey had spoken with her on the phone and had told her that, "he'd filled [the generator] up with gasoline."

The record further reveals that Plaintiffs' experts, Evans and McGee, testified

they had no opinion as to whether the fuel tank suffered a leak. When Generac's counsel asked Evans, "Would you agree with me that an operator of a generator like this shouldn't fill the gas tank all the way to the top, or within a half inch of the top?," Evans answered, "I wouldn't do it." Evans also testified on cross-examination that it was "normal operation" for a manifold to become hot on a gasoline-powered engine and that the manifold of the generator was not defective. He further related that when gas vapor escapes out of the top of a gasoline tank it is an indication that the tank was too full, which could lead to liquid escaping and igniting due to the heat from the manifold.

Lastly, Generac's counsel impeached Evans with prior deposition testimony in which Evans had testified that during his initial investigation of the fire he found the 10,000 watt generator less than two feet away from the wall of the building, a fact which, again, is contrary to the recommendations of the generator's product manual.

For the reasons stated, we reject Plaintiffs' contention that the trial court erred in refusing to give the proposed withdrawal instruction. This tendered instruction went too far in withdrawing from consideration evidence relating to the possible misuse of the generator by Plaintiff Haffey. "[S]uch evidence was properly admitted for the consideration of the jury in determining the existence of a defect and the causation of the accident." *Earll v. Cons. Alum. Corp.*, 714 S.W.2d 932, 938 (Mo. App.1986). Point denied.

The judgment is affirmed.

GARRISON, J., and BATES, C.J., concur.