**Doris BERTRAM, Plaintiff-Appellant,**

**v.**

**Clifton WUNNING, Defendant-Respondent.**

**No. 32493.**

St. Louis Court of Appeals.

Missouri.

May 16, 1967.

Motion for Rehearing, or to Transfer to Supreme Court Denied June 14, 1967.

Application to Transfer Denied Sept. 11, 1967.

Librach & Heller, St. Louis, E. L. Mc-Clintock, Jr., Flat River, Satz & Ponfil, St. Louis, for plaintiff-appellant.

Roberts & Roberts, Farmington, for defendant-respondent.

BRADY, Commissioner.

Plaintiff brought this action to recover damages for personal injuries arising out of an automobile collision. The defendant admitted liability and the sole issue tried and submitted was the amount of plaintiff's recovery. Plaintiff received a verdict and judgment for $7,500.00. Timely after-trial motions being filed, the trial court ordered a remittitur in the amount of $3,-500.00 or, in the alternative, sustained defendant's motion for a new trial upon seven specified grounds. Plaintiff refused to accept the reduced judgment and this appeal follows.

To fully understand the issues here involved it is necessary to detail some of the background of this case. This appeal results from the second trial of this cause. As in the instant case, at the original trial the defendant admitted liability and the sole issue submitted to the jury was the nature, extent, and amount plaintiff was to receive as compensation for her injuries. Plaintiff then received a verdict and judgment for $5,000.00. Upon appeal by defendant this court reversed that judgment and remanded this cause for a new trial. See Bertram v. Wunning, Mo.App., 385 S.W.2d 803. The issue upon which that appeal turned was the testimony of Dr. Niesen, plaintiff's treating physician. At that trial Dr. Niesen was asked for his opinion "based upon reasonable medical certainty" as to whether or not the accident caused a hernia which he found present in plaintiff about three months after the accident. His answer was: "It could be. I couldn't say." Upon the question being repeated his answer was: "I would say it would be about a 90 per cent chance that it was caused by that and 10 per cent it wasn't." When asked whether that percentage was his opinion based

upon reasonable medical certainty, he stated, "That's the only way I could answer such a question." This court held that Dr. Niesen's testimony was not substantial evidence of causal connection between the hernia and the accident as required for submission of that issue to the jury. The evidence introduced during the instant trial shows that on April 23rd, 1960, the defendant was traveling at about 30 miles per hour on the wrong side of the road at the time the collision occurred. The automobiles involved hit head-on as a result of which plaintiff was thrown forward, her stomach and chest hit the steering wheel and her head struck upon some unidentified object. She was dazed and was taken to the hospital by ambulance. Dr. Niesen testified that upon examination at the hospital he found plaintiff had a hematoma of the scalp, that plaintiff had extreme difficulty in moving her neck, suffered from tenderness along the bones of the neck, had a large bruise on her chest wall, tenderness of the abdomen, bruises on the abdominal wall, and black and blue marks on her left arm and forearm. His diagnosis was that she was suffering from a brain concussion, hematoma of the scalp, a possible hematoma of the stomach, a whiplash injury of the cervical spine, tearing of the muscles and soft tissue in plaintiff's neck, and bruises on her left arm.

Appellant was in the hospital for two weeks and was confined to her bed during the first week. During this time she had pains in her chest and stomach and could not eat because of nausea. She continued to have headaches and vomiting and Dr. Niesen called in a neuropsychiatrist, Dr. Mueller, to examine her. His testimony will be referred to later herein. Plaintiff stayed in the hospital for some two weeks when she was discharged by Dr. Niesen. However, after that time she continued to complain of difficulty in moving her neck and of numbness in her arms and legs. On her first visit to Dr. Niesen after her discharge from the hospital she was improved but not well and Dr. Niesen continued to

treat her for headaches and arm and neck pains on some twenty or more visits from May, 1960, through October, 1965. It was Dr. Niesen's opinion that plaintiff would suffer from headaches and pains in her neck, arms and shoulders in the future, that these pains were the result of permanent injuries, and that she would need future medical attention for these reasons.

Dr. Mueller testified that his diagnosis of plaintiff showed whiplash injury to the cervical spine and "traumatic psychoneurosis".. Dr. Mueller continued to treat plaintiff through May of 1961. His opinion was that her condition was the result of this accident and that she would continue to suffer from traumatic psychoneurosis in the future.

The occurrences that caused the trial court to sustain defendant's motion for new trial began when plaintiff's counsel was making his opening statement. He then advised the jury that in treating plaintiff's injuries her doctor had discovered a femoral hernia. Defendant immediately objected that such an injury was not in the case "* * * based upon the testimony of the doctor heretofore given". Out of the hearing of the jury defendant's counsel explained that his objection was based upon the doctor's testimony at the first trial and this court's ruling upon the appeal from that judgment. The objection was overruled.

The next pertinent incident occurred while plaintiff's counsel was examining Dr. Niesen. The doctor was asked for his opinion as to whether a scar "caused by a surgical operation is a permanent thing?" An objection was made on the ground there was no showing of any surgical operation. Plaintiff's counsel stated to the court that there would be such evidence and upon that ground the objection was overruled.

This matter of the doctor's testimony as to the causal connection between the hernia and the accident came directly into the case in the following manner. Dr. Niesen was asked if plaintiff was readmitted to the hospital after her discharge and upon testifying that she was he was asked to describe the conditions governing that second admittance. The doctor's answer was, "She had a, uh, left femoral hernia." Defendant objected to any further examination or evidence regarding this hernia. The trial court overruled that objection whereupon defendant's counsel requested a voir dire examination of Dr. Niesen. This voir dire is lengthy and it will serve no useful purpose to set it out in full in this opinion. It is sufficient to state that as a result of that voir dire examination it appeared that if allowed to do so Dr. Niesen intended to testify that, within reasonable medical certainty, he was of the opinion that the hernia was caused by the accident. Further voir dire revealed the fact that it was the doctor's opinion that a 90 percent chance that the hernia was caused by the accident was, in his opinion, reasonable medical certainty that it was so caused. Defendant's counsel then moved the court to declare a mistrial because of the prejudicial effects of the remarks concerning the hernia. That motion was overruled but the trial court sustained defendant's request that the jury be instructed to disregard the question of plaintiff's hernia in their deliberations. The jury was returned to the courtroom and addressed by the court as follows: "BY THE COURT: Ladies and gentlemen of the Jury, a motion has been made and sustained by the Court to strike from your consideration any question about a hernia that the plaintiff may have sustained or allegedly have sustained as a result of this accident. I must now direct you and instruct you that in your deliberations you must not consider in any way any question as to whether or not the plaintiff sustained a hernia or a rupture as a result of the accident in question. You may proceed gentlemen." Plaintiff's counsel then, again out of the hearing of the jury, questioned Dr. Niesen and the following questions were asked and answers were given in a manner which we will take as an offer of proof as to what the witness would testify with regard to causation of hernia if he had

been allowed to do so. "BY MR. BYRNE: I wanted to make sure my record is in good shape, Your Honor, in regard to this point. Doctor, assume if you will that in this accident of April 23rd, 1960, Mrs. Bertram had a blow to her abdomen; assume, if you will, that in the course of her hospitalization she experienced pain and distention in her abdomen; and assume further, if you will, that at the time she experienced that pain from that time until she was discharged from the hospital, then on July 19, 1960, you found a femoral hernia; I will ask you to state, Doctor, if you have an opinion, based upon reasonable medical certainty, as to whether or not the accident I have described; that is, her being struck in a head-on collision, being thrown forward and striking her abdomen, having pain in her abdomen and discoloration of her abdomen, and this distention; whether or not such an accident I've described is a competent producing cause of the femoral hernia which you found present in Mrs. Bertram on July 19th, 1960? A. *Within reasonable medical certainty, yes.* Q. All right. BY MR. BYRNE: That's all I have. BY MR. ROBERTS: Q. Doctor, did you just testify a few minutes ago before this Court under oath, without the aid of a Jury, that in your opinion that you were basing this on a 90–10 percentage the same as you did in the other trial? A. To me that's reasonable medical certainty. Yes, sir. Q. And you are basing your answer of reasonable medical certainty on a 90–10 percentage? A. No. *My reasonable medical certainty is a 90–10* percentage. You have it reversed." (Emphasis supplied.)

During plaintiff's counsel's closing argument the following occurred: "* * * Mr. Roberts mentions Dr. Niesen, certain visits. If you recall, we had a recess this morning and when you returned to the courtroom the Court instructed you that you must dismiss from your mind certain medical testimony that was in this case. Dr. Niesen said he could only give certain dates because the other dates were tied in with this other medical problem which the Court has decided you could not consider. Mr. Roberts —* * *." There was an objection to which the court stated: "BY THE COURT: The jurors are the judges of the facts. Proceed." There was no other ruling by the court.

The grounds upon which the trial court sustained the motion for new trial are to be gleaned from the trial court's sustention of certain specified paragraphs in the motion for new trial based on the theory that the references to the defendant's hernia were improperly admitted. In essence, the plaintiff's theory upon appeal is that the evidence with regard to the hernia was improperly excluded with the result that the rulings of the trial court which it later held erroneous were actually not and thus could not have prejudiced the defendant as to justify the granting of a new trial. She also contends that this verdict is amply supported by evidence of plaintiff's injuries excluding the hernia and therefore cannot be held excessive.

Two other grounds stated in the motion for new trial and sustained by the trial court are in fact restatements of the same contention; i. e., that "plaintiff's counsel deliberately, knowingly and falsely deceived the court" by statements with regard to what his evidence would show as to the causal connection between the hernia and the accident.

It is well settled that if any ground in a motion for new trial sustained by the trial court is well taken, the trial court's action granting the motion is to be affirmed. Dugdale Packing Co. v. Lowden, Mo.App., 160 S.W.2d 832, l. c. [7] 838. Considering the last two stated grounds dealing with the allegation in the motion for new trial that plaintiff's counsel deliberately, knowingly and falsely deceived the trial court, we find nothing in this record to justify such a sweeping denunciation of plaintiff's counsel's motives. All that this record shows is that plaintiff's counsel thought he had evidence that would justify his state-

ments with regard to a hernia and on that basis attempted to introduce such evidence and to make further remarks informing the jury as to the existence of this hernia and its causation by the accident. There is no evidence whatever nor any inference of any deliberate, knowingly false statements to the court. The transcript does show that plaintiff's counsel disagreed with his opponent and with the court as to certain rulings made by the court with regard to evidence of this hernia but his position was based upon his contention Dr. Niesen's testimony should have been allowed and constituted sufficient evidence of causal connection between the accident and the hernia. There was nothing discourteous in his remarks and his position in this regard cannot be said to sink to the level of a deliberate false statement knowingly made to deceive the trial court. Moreover, as will later be held herein, plaintiff's counsel's interpretation of the law was the correct one. Under such circumstances these assigned grounds of the motion for new trial do not justify the granting of a new trial.

■ Except for the issue of excessiveness the other grounds for new trial contained in defendant's motion and sustained by the trial court are based solely on the issue as to the admissibility of the evidence with regard to the hernia. Dr. Niesen's testimony in the instant case materially differs from that he gave at the first trial. In the instant case his reply to the hypothetical question as to causal connection was not couched in terms of "could be" or "I couldn't say" but was a definite affirmance that within "reasonable medical certainty" his opinion was the accident caused the hernia. What the phrase "reasonable medical certainty" meant to Dr. Niesen is a matter going solely to the weight to be given his testimony and not to whether such testimony constitutes sufficient evidence of a causal connection between the hernia and the accident.

■ The only ground sustained by the trial court remaining is that the verdict was excessive. In Missouri excessive verdicts fall into two categories; i. e., (1) verdicts reflecting what has been characterized as "simple excessiveness", and (2) verdicts reflecting excessiveness by misconduct. The first is the result of an honest mistake by the jury so that the sum awarded is disproportionate under the rule of uniformity. Errors of this nature should be cured by enforced remittitur thus avoiding the delay and expense incident to re-trial. The latter type of excessive verdict usually savors of bias and prejudice engendered during trial. A verdict of this nature cannot be cured by remittitur and necessitates a new trial. Moore v. Glasgow, Mo.App., 366 S.W.2d 475, l. c. 478, and cases there cited. By sustaining Paragraph 13 of the motion for new trial the trial court clearly regarded the verdict in the instant case as one of simple excessiveness. This is made clear in view of the language in that paragraph referring to the lack of sufficient evidence to support the verdict. Moore v. Glasgow, supra. It is further made clear by the fact the trial court refused to grant a new trial upon the grounds alleged in another paragraph of defendant's motion wherein the verdict was referred to as "so excessive as to shock the conscience of the Court and so excessive as to show bias and prejudice against the defendant * * *." Accordingly we are here concerned with whether or not a remittitur should be ordered and not with a situation where the excessiveness, if found, would require a new trial.

In this connection the trial court's admonition to the jury is to be kept in mind. Therein they were specifically directed to strike from their consideration any question of the hernia and not to consider in any way whether plaintiff sustained a hernia as a result of this accident. Plaintiff contends the jury did obey this admonition and, in arriving at their verdict, confined themselves solely to plaintiff's other injuries. The evidence as to these indicates that plaintiff suffered a brain concussion which caused continued vomiting and headaches; was confined to the hospital for two weeks,

the first week of which she spent in bed; suffered a whiplash injury of the cervical spine; that certain muscles and soft tissue in appellant's neck were torn; and suffered from traumatic psychoneurosis as a result of this accident. It further appeared that plaintiff would suffer from continued headaches and pain in her neck and arm; that the pain she would suffer was a result of permanent injuries which she had incurred and which would require medical attention in the future; that her traumatic psychoneurosis would continue in the future; and that at the time of trial, some five years after the accident, plaintiff still suffered from pains, headaches and dizziness.

It is well established the trial court has broad discretion in sustaining a motion for new trial upon the ground of excessiveness. In determining that the verdict is excessive the trial court is weighing the evidence and in effect the grant of a new trial for that reason is the same as though the new trial was granted upon the ground the verdict was against the weight of the evidence. Wicker v. Knox Glass Associates, 362 Mo. 614, 242 S.W.2d 566; Union Electric Co. v. McNulty, Mo., 344 S.W.2d 37. Accordingly such a ruling by the trial court will not be overturned absent a clear abuse of discretion. Union Electric Co. v. McNulty, supra; State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654. The trial court was present at the trial and heard the testimony of the witnesses as well as having the opportunity to observe them. This court might not have reached the same conclusion as to the excessiveness of this verdict. Compare Glowczwski v. Foster, Mo.App., 359 S.W.2d 406, where we affirmed an award of $7,-500.00 although the injuries were seemingly less severe but there was evidence of medical expenses and property damage; elements of damage which are absent from the instant record. Nevertheless each case must stand upon its own facts and we cannot say the trial court's action was such an abuse of discretion as to require our interference.

We therefore hold that the trial court must be affirmed in its action in granting a new trial. Since the issue of damages was the only thing tried, the defendant having admitted liability, the new trial must of course be confined to that issue.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The trial court is affirmed in its action in granting a new trial which of course must be confined to the issue of damages.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.