**Sharolyn K. DAVIS, Appellant,**

**v.**

**Stephen D. PERKINS, Respondent.**

**No. KCD 26543.**

Missouri Court of Appeals,
Kansas City District.

Aug. 5, 1974.

Allan J. Fanning, Kansas City, for appellant.

Donald L. Mason, Kansas City, for respondent; Sheridan, Sanders, Carr, White & Mason, Kansas City, of counsel.

Before PRITCHARD, P. J., and SWOFFORD, and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This appeal arises from an action for damages resulting from a motor vehicle accident which occurred on March 25, 1971, at the intersection of Truman Road and Main Street in Kansas City, Missouri. A jury found defendant negligent and assessed damages in favor of plaintiff in the sum of $14,000.00. Liability is not an issue on appeal, thus any necessity or purpose for delineating the facts surrounding such issue is eliminated. Suffice it to say, there

was ample evidence to support the jury's finding as to defendant's negligence.

Judgment was entered in accordance with the jury's verdict. Thereafter, defendant filed a motion for judgment in accordance with his motion for a directed verdict at the close of all the evidence, or, in the alternative, for a new trial. Defendant urged six grounds in support of his motion for a new trial. Each ground was set forth in a separately numbered paragraph. Separately numbered paragraph 1 asserted "that the verdict of the jury was excessive and exorbitant." Separately numbered paragraph 2 asserted "that the court erred in submitting the issue of plaintiff's back injury, as disclosed by the evidence, to the jury, as there was no causal connection between said back injury and conditions and the automobile accident, and there was insufficient factual and medical testimony and evidence to support the submission of that issue to the jury."

The trial court sustained defendant's motion for a new trial and in doing so entered the following order: "Now on this day the Court sustains defendant's motion for new trial on ground one, that the verdict was excessive, and on ground two, error in submitting the issue of the plaintiff's back injury." Plaintiff appeals from the order granting the new trial and in this court impugns the order granting the new trial on four grounds. First, plaintiff asserts that the trial court abused its discretion in granting defendant a new trial on the grounds of excessive verdict and error in submitting plaintiff's back injury because the two grounds are inconsistent or, in effect, constitute only one ground, error in submitting plaintiff's back injury. Employing this first ground as a basic thesis, plaintiff then asserts, as her second ground, that the trial court erred as a matter of law in granting defendant a new trial because of error in submitting plaintiff's back injury, since submissibility of plaintiff's back injury was a legal determination rather than the exercise of judicial discretion inherent in the granting of a

new trial for excessiveness of a verdict and there was substantial evidence to prove a causal connection between plaintiff's back injury and the motor vehicle accident or that plaintiff's back injury was caused by falls resulting from knee injuries sustained by plaintiff in the motor vehicle accident. Third, plaintiff asserts that the trial court abused its discretion in granting defendant a new trial because there was no substantial evidence in the record upon which the jury could have returned a verdict for defendant. Fourth, plaintiff asserts that the trial court did not err in failing to sustain defendant's motion for a directed verdict on the grounds of contributory negligence because defendant waived any such motion.

■ It is a well recognized principle that if either of the reasons assigned for the granting of a new trial is proper, the action of the trial court should be affirmed. State ex rel. State Highway Commission v. Klipsch, 414 S.W.2d 783 (Mo. 1967); Vaughn v. Ripley, 446 S.W.2d 475 (Mo.App.1969); and Bertram v. Wunning, 417 S.W.2d 120 (Mo.App.1967).

■ Plaintiff urges this court to hold the reasons given by the trial court for granting a new trial to be inextricably related. That is, the verdict was excessive because the back injury was improperly submitted. This court refuses to do so, because a reading of the order granting the new trial clearly shows the assigned reasons to be separate, distinct and independent. This conclusion is strengthened when the order is juxtaposed with the defendant's motion for a new trial, which presented the reasons distinctly and independently in separately numbered paragraphs. State ex rel. State Highway Commission v. Vaught, 400 S.W.2d 153 (Mo. 1966) constitutes legal authority for the conclusion reached. There, the property owner in a condemnation case was granted a new trial on the grounds that the ". . . Court abused its discretion in allowing Commissioners Riebold and Wann

to testify as witnesses and also on the grounds that the verdict is against the greater weight of the credible evidence . . . ." On appeal the State contended that commissioners may be used as witnesses by either party in a condemnation case with certain restrictions, none of which were violated. Building from this point, the State argued, analogous to plaintiff's argument in this case, that the two assigned grounds, that the verdict was against the weight of the evidence (a discretionary ground) and that the testimony of the two commissioners was improperly admitted (a legal and non-discretionary ground) were so related that the sole reason, in fact, for granting the new trial was that the verdict was against the weight of the evidence without the testimony of the two commissioners, thus, constituting a non-discretionary legal ground, rather than a discretionary ground. The Court in State ex rel. State Highway v. Vaught, supra, 1. c. 154, resolved this contention as follows:

"The order in this case is in clear and unambiguous language, and it clearly sets forth two reasons or grounds, the second of which is that the verdict was against the greater weight of the credible evidence. We cannot go behind what is clearly expressed in the order, surmise as to what may or may not have motivated the order, and then conclude that what the trial court really meant to say, but did not, was that without the testimony of witnesses Riebold and Wann the verdict was against the greater weight of the credible evidence."

By the same reasoning plaintiff's first point is not persuasive and is ruled against her. Consequently, if either of the reasons assigned for granting the new trial in this case was proper, the action of the trial court should be affirmed. State ex rel. State Highway Commission v. Vaught, supra; State ex rel. State Highway Commission v. Klipsch, supra; Vaughn v. Ripley, supra; and Bertram v. Wunning, supra.

Thus, if the trial court did not abuse its discretion in granting defendant a new trial on the discretionary ground that the verdict was excessive, it becomes unnecessary to rule on whether the court erred as a matter of law in granting defendant a new trial because plaintiff's back injury was improperly submitted to the jury.

Did the trial court abuse its discretion in granting defendant a new trial on the ground that the verdict was excessive? In resolving this query, the following well established principles come into play. The trial court has broad discretion in granting a new trial on the ground of excessiveness; the breadth of discretion in doing so is equivalent to the breadth of discretion vested in the trial court in granting a new trial on the ground that the verdict is against the weight of the evidence. Wicker v. Knox Glass Associates, 362 Mo. 614, 242 S.W.2d 566 (Mo.1951); Union Electric Company of Missouri v. McNulty, 344 S.W.2d 37 (Mo.1961); and Pisha v. Sears Roebuck & Company, 496 S.W.2d 280 (Mo.App.1973). Accordingly, the granting of a new trial on the ground of excessiveness will not be interfered with absent a clear abuse of discretion. Union Electric Company of Missouri v. McNulty, supra; and State ex rel. State Highway Commission v. Koberna, 396 S.W.2d 654 (Mo.1965). The trial court in ruling on a motion for a new trial predicated on discretionary grounds is entitled to consider all the evidence attendant to the issues under consideration, [Chrum v. St. Louis Public Service Co., 242 S.W.2d 54 (Mo. 1951); and Bierman v. Langston, 304 S. W.2d 865 (Mo.1957)], "the credibility of that evidence on the question of excessiveness of the verdict [is], in the first instance, a matter peculiarly for the consideration of the trial court." [Bierman v. Langston, supra, 1. c. 868], and the trial court may pass on the weight of such evidence [Bailey v. Interstate Airmotive, 358 Mo. 1121, 219 S.W.2d 333 (1949); Knight v. Swift and Company, 338 S.W.2d 795 (Mo.1960); Steuernagel v. St. Louis Pub-

lic Service Co., 361 Mo. 1066, 238 S.W.2d 426 (1951); and Mohesky v. City of Washington, 432 S.W.2d 364 (Mo.App. 1968)].

◼ In conjunction with plaintiff's alleged back injury, a review of the evidence consistent with the above enumerated principles discloses the following. As a result of the impact of the motor vehicle accident which occurred on March 25, 1971, plaintiff's head, chest and knees struck interior portions of the vehicle she was driving. Plaintiff first sought medical attention the day following the accident due to the fact that her knees had swollen and she was suffering from a headache.

She went to St. Mary's Hospital where she was treated as an out-patient. Examination of plaintiff at St. Mary's Hospital revealed a small tender area on her scalp and the diagnosis to her knees was "soft tissue trauma". Plaintiff had no back complaints of any kind. Following her treatment as an out-patient at St. Mary's Hospital, plaintiff used crutches six or seven weeks to keep the weight off her knees. Thereafter she testified that she had difficulty in walking any considerable distance and experienced occasions of falling at unpredictable times, especially when playing tennis or golf, water-skiing and bowling. All of her complaints relative to her head subsided completely within several days following the accident.

In April and May of 1971, plaintiff went to Robert Drisko, M. D., Kansas City, Missouri, and complained of weakness and pain in her knees, accompanied by complaints that her knees gave away or buckled on her on occasions. She at no time made any complaints about her back to Dr. Drisko. Dr. Drisko's examination revealed no bone or ligamentous injury to the plaintiff's knees, but he recommended physiotherapy treatments for her knees.

On June 7, 1971, plaintiff was examined by Alexander Lichtor, M. D., Kansas City, Missouri, at which time her complaints

were limited solely to her knees and she made no complaints of any kind regarding her back.

In September of 1971, plaintiff was examined by Fagan N. White, M. D., Russell, Kansas. The only complaints plaintiff made to Dr. White were with respect to her knees and she at no time made any complaints concerning her back. Dr. White found no severe loss of stability to plaintiff's knees but did diagnose some tenderness.

On March 17, 1972, plaintiff testified that she was "scooting" a television set at which time her left knee buckled and she fell to the floor on her left side, at which time she experienced a "tingling" sensation through her legs, knees and back. This incident occurred almost a year after the motor vehicle accident of March 25, 1971, and constituted the first occasion that plaintiff ever complained about her back. Plaintiff was taken to St. Luke's Hospital, Kansas City, Missouri, where she was treated as an out-patient. The records of St. Luke's Hospital, under date of March 17, 1972, disclosed that plaintiff's complaint was "moving TV this morning and hurt the small of back". The referred to records further disclosed plaintiff's condition at that time was diagnosed as "acute lumbosacral strain" and bed rest and heat on her low back were prescribed. X-rays taken at St. Luke's Hospital on this occasion revealed "narrowing of the lumbosacral joint space associated with slight scoliosis of the lower spine to the left."

On March 29, 1972, plaintiff sought treatments from Dr. Norma Sturtridge, Kansas City, Missouri, a licensed chiropractor, for back complaints. Plaintiff received four or five chiropractic treatments from Dr. Sturtridge, after which plaintiff told Dr. Sturtridge that she was free of pain. Dr. Sturtridge, who appeared as a witness on plaintiff's behalf at the trial, testified that plaintiff on her initial visit complained of a "catch in the back" and

that "she had lifted a television set and she elicited pain in this way in this area."

On May 7, 1972, plaintiff was visiting her sister in Quincy, Illinois, at which time plaintiff fell in the sister's front yard when her left knee buckled under her. Plaintiff was admitted to Blessing Hospital in Quincy, Illinois, because of severe low back pain radiating down her left lower extremity. Felix M. Martin, M. D., Quincy, Illinois, examined her at the hospital and after conducting certain clinical tests, as well as a myelographic study, stated it was his impression that plaintiff was suffering from "bulging intervertebral disc at L 4–5 and lumbosacral levels, with probable herniation of some disc material at lumbosacral level on the left." Plaintiff then underwent surgery which was performed by Dr. Martin, and which consisted of a partial laminectomy and a radial excision of herniated discs materials at L 4–5 and L 5 S1. Plaintiff made a good recovery from the surgery and was released from Blessing Hospital after a stay of two weeks at which time she returned to her home in Kansas City, Missouri.

Dr. Martin, who appeared as a witness on behalf of plaintiff at the trial by way of deposition, testified on direct-examination that it was his opinion, to a reasonable degree of medical certainty, that his examination of plaintiff strongly suggested a relationship between the weakness in her knees and the low back pathology, and, further, to a reasonable degree of medical certainty, that the weakness and pain occasioned by plaintiff in her knees was caused by the automobile accident. Dr. Martin further testified that nerve root involvement in plaintiff's lower back manifested itself by weakness in plaintiff's knees. However, Dr. Martin at no time ever directly testified that, in his opinion, to a reasonable degree of medical certainty, the extruded disc which he diagnosed and performed surgery for was caused by the automobile accident. On cross-examination Dr. Martin testified that the lifting of

the television set by plaintiff "could have caused [the ruptured disc]" but it was his opinion that the weakness in plaintiff's knees was "an early sign of nerve root involvement due to pathology in the back". The final question put to Dr. Martin on cross-examination was, "But the lifting of the television set could have been the etiology of the extruded lumbar disc which you found later?" To which Dr. Martin answered, "In the most absolute way it is possible, it could have been."

Dr. Lichtor, who appeared as a witness on behalf of plaintiff, testified that the only complaints plaintiff made were with respect to her knees and he diagnosed her condition, referring to her knees, as "a bruising, possibly a sprain, of the ligaments." Dr. Lichtor further testified that it was his opinion, to a reasonable degree of medical certainty, that the injuries he diagnosed to plaintiff's knees were caused by the automobile accident. On cross-examination Dr. Lichtor testified that plaintiff made no complaint to him whatsoever regarding her back, nor did she make any complaints that would in any way indicate any nerve root involvement. Consequently, he did not conduct any clinical tests or make any examination of plaintiff directed towards any back condition.

Plaintiff introduced exhibits showing total medical expenses incurred in the approximate amount of $2,800.00; additionally, she testified she had a total loss of wages amounting to $1,100.00. However, the bulk of her total medical expenses and claimed loss of wages was incurred subsequent to March 17, 1972, the date she first expressed any complaints or manifested any symptoms regarding her back.

Thomas R. Hunt, M. D., Kansas City, Missouri, a board certified neurosurgeon, who appeared as a witness on behalf of defendant, testified that the nerves that emanate from between L 4–5 and L 5–S1 "go to structures below the knees". In response to a hypothetical question, Dr. Hunt

stated that it was his opinion, based upon reasonable medical certainty, that plaintiff's "disc condition for which she was operated on was occasioned by the lifting of the TV set."

At the time of the motor vehicle accident on March 25, 1971, plaintiff testified that she was employed at All-Star Transportation Company and her employment there was terminated several weeks following the accident due to her physical inability to perform her work. However, plaintiff's supervisor at All-Star Transportation Company was called as a witness by defendant, and testified that he terminated plaintiff's employment for her tardiness, absences and over-all inability to understand the business or do the work, and that her termination had nothing to do with any physical disability. Plaintiff further testified that in March of 1971 she was in the process of setting up a bookkeeping service which she had to discontinue because of her physical condition. However, Thomas Sotham, Jr., who appeared as a witness on behalf of defendant, testified that he had made arrangements for plaintiff to post a set of books and although plaintiff kept the books two or three weeks she performed no work on them so he picked them up and discontinued plaintiff's services.

After a thorough and careful review of all the evidence tending to establish the nature and extent of the injuries and special damages claimed by plaintiff to have resulted from the motor vehicle accident that occurred on March 25, 1971, including, but not limited to, that hereinabove set forth, which is merely illustrative of the lack of evidentiary unanimity as to the cause, nature and extent of all the injuries and special damages claimed by plaintiff as a result of the motor vehicle accident in question, this court is unwilling to say that the trial court abused its discretion in granting defendant a new trial on the discretionary ground that the verdict returned in favor of plaintiff in the sum and amount of $14,000.00 was excessive. Having so ruled, disposition of this appeal does not require a ruling on whether the trial court erred in granting a new trial because of "error in submitting the issue of the plaintiff's back injury", the second ground asserted by plaintiff.

■ Plaintiff's third ground for appellate relief, that the trial court abused its discretion in granting defendant a new trial because there was no substantial evidence in the record upon which the jury could have returned a verdict for defendant, is presented absent citation of authority and cogent argument, and is ruled against plaintiff. To infuse plaintiff's third ground with viability this court would be required to hold that the granting of a new trial by the trial court on the discretionary ground of simple excessiveness of the verdict can never be affirmed on appeal absent a collateral finding on appeal that there was substantial evidence from which the jury could have found in favor of the defendant on the issue of liability. To so hold would represent a total misconception of both the wide latitude vested in the trial court in ordering a new trial on the discretionary ground of simple excessiveness of the verdict and the narrow latitude vested in the appellate court to review such an order. The trial court's broad latitude of discretion and the appellate court's narrow latitute of review in the particular respect mentioned finds expression in Combs v. Combs, 295 S.W.2d 78, 80 (Mo. 1956), where the sole issue on appeal was the "propriety of granting a new trial on the ground of excessiveness of the verdict" after plaintiff refused to remit:

"In the exercise of that important function, it is the right and duty of the trial judge to consider and weigh the evidence in the light of his opportunity to hear and observe the plaintiff and all other witnesses who appear before him and to give to their testimony such weight and

value as he deems it entitled. If the trial court determines that the injuries are not so serious or disabling as to warrant the award of the jury and orders a remittitur, as he did in the instant case, it becomes the duty of this court on appeal, not to weigh the evidence, but to determine only whether there is evidence that substantially and reasonably supports the view and finding of the trial court. If the evidence, viewed in the light most favorable to the court's ruling, reasonably supports the order, it is our duty to sustain it."

This court observes that the plaintiff herein does not contend that even though her injuries and special damages are only to the extent shown by the evidence most favorable to the defendant, the granting of a new trial on the ground of excessiveness nevertheless constituted an abuse of discretion, nor has plaintiff cited a single case wherein a final judgment of $14,000.00 for comparable injuries and special damages, as shown by the evidence most favorable to the defendant, has been heretofore approved by this or any other appellate court in this state.

■ Plaintiff's fourth and final ground for appellate relief, to say the least, is somewhat unusual. She does not claim error, but claims the trial court *did not* err in failing to sustain defendant's motion for a directed verdict on the ground of contributory negligence because defendant waived any such motion. In asserting this ground, plaintiff was anticipating that defendant would, on appeal, urge that he was entitled to a directed verdict. Defendant did not so urge on appeal, and plaintiff's fourth and final ground for appellate relief is therefore rendered moot.

The order granting a new trial is affirmed, but only on the discretionary ground that the verdict was excessive, and the cause is remanded.

All concur.