**Tom W. RECH, Appellant,**

v.

**AAA PLUMBING COMPANY, et al., Respondent.**

**No. 57429.**

Missouri Court of Appeals, Eastern District, Division One.

Oct. 23, 1990.

Ruth A. Przybeck, St. Louis, for respondent.

Brian R. Gelber, St. Louis, for appellant.

KAROHL, Judge.

Plaintiff, Tom W. Rech, appeals from trial court judgment notwithstanding the verdict in favor of defendant, T.C. Investment Company, Inc. In the alternative, the court sustained defendant's motion for new trial. The court set aside a jury verdict in favor of Rech for $72,000 on his personal injury claim. This award was subject to a $22,500 reduction due to Rech's settlement with AAA Plumbing Company, a joint-tortfeasor, who is not a party here. We affirm.

Rech sued AAA Plumbing and defendant for personal injuries he allegedly sustained on May 11, 1987. Rech was backing down the sidewalk in front of his home, pulling a hose when he stepped on something, lost his balance and partially fell into a hole. AAA Plumbing cut the hole in order to make a water tap in the subdivision owned by defendant.

Upon slipping and falling, Rech twisted his leg, snapped his knee, hit the lower part

of his back on the edge of the hole, hit his head on the dirt and pinned his right leg in the hole. Due to his prior experience with lower back pain and knee problems, Rech did not go to an emergency room. Instead, he made an appointment with Dr. Harlan Hunter, his regular orthopedic doctor. Rech had a seventeen year history of left knee pain attributed to football and motorcycle injuries. Prior to this incident, Rech underwent five surgeries on his left knee and two surgeries on his right knee. Rech testified the last time he saw a doctor for knee problems was in 1982. He also testified he was able to dance and participate in sports the weekend before his fall.

On May 19, 1987, Dr. Hunter examined Rech and found advanced degenerative arthritis in both compartments of the left knee, degenerative arthritis in one compartment of the right knee, as well as tenderness and slight scoliosis of the back. Dr. Hunter noted:

> The [patient] and I go back a long way and I know the condition of his knee and the severity of the arthritis. We have talked numerous times, away from the office, about total knee replacement. The [patient] is desiring and requesting that one surgery be done on it and to get on with it. He is tired with this year by year by year of having problems.

Rech continued therapy from May until September in 1987. Rech returned to Dr. Hunter in April 1988. At that time Dr. Hunter described Rech's left knee to have "marked knee crepitiation, gross advanced degenerative arthritis appearing like a 90 year old with popping, catching, grinding, re-occurrent effusion in the knee." Dr. Hunter recommended total knee replacement. Dr. Hunter also noted, "[Patient's] condition has been aggravated by his last episode. He described approximately a year ago after he fell in a hole in the yard. Since this time he has had increasing discomfort in his knee." On May 2, 1988, Rech's left knee was replaced. On March 3, 1989, Rech underwent orthroscopic surgery on his right knee.

Dr. Hunter, the treating physician, did not testify at trial. Neither party presented expert medical testimony. However, Rech introduced medical records and testified on his own behalf in an attempt to prove his injuries were caused by the accident. Defendant read into evidence parts of medical records in order to prove Rech's pre-existing condition necessitated subsequent treatment and surgery.

Defendant in his motion for directed verdict argued Rech did not make a submissible case because he failed to causally link his injuries to the fall. Trial court overruled defendant's motion for directed verdict at the close of all the evidence. The trial court subsequently granted j.n.o.v. Trial court decided Rech did not make a submissible case because he failed to: 1) produce competent evidence that defendant excavated the hole where he fell; 2) produce competent evidence to show defendant's negligence was the proximate cause of his injuries; 3) prove he suffered any damages resulting from defendant's act or omission; and 4) adduce medical expert opinion that his injuries (including the nature, extent and permanency), subsequent treatment and damages were caused by defendant's negligence.

On appeal we will reverse j.n.o.v. for defendant unless the facts and inferences are so strongly against plaintiff as to leave no room for reasonable minds to differ. *Holmes v. Gamewell*, 712 S.W.2d 34, 35 (Mo.App.1986). Thus, we examine the pleadings and review the evidence in the light most favorable to Rech. *Id.*

Rech first claims the trial court erred in granting defendant's j.n.o.v. because the evidence was sufficient to support a verdict on his claim. The burden to plead and prove all elements of the claimed negligence rested on plaintiff. *Courtney v. Emmons*, 702 S.W.2d 139, 141 (Mo.App. 1985). Plaintiff must establish by substantial evidence that defendant's negligence was the proximate cause of his injuries. *Harris v. Washington*, 654 S.W.2d 303, 306 (Mo.App.1983).

■ Rech contends his testimony and injuries were sufficient to invoke the sudden onset doctrine. Where an injury develops simultaneously with defendant's negligent

act and the cause of the injury is obvious, plaintiff may employ the sudden onset doctrine to prove causal connection. *Carmack v. Bi–State Development Agency,* 731 S.W.2d 518, 520 (Mo.App.1987). However, the sudden onset doctrine is unavailable when a pre-existing condition or intervening factor exists. *Holmes,* 712 S.W.2d at 37.

▮▮▮ Because Rech's fall did not result in a sudden onset, visible injury or injury of common knowledge, expert medical testimony combined with other evidence tending to show causation with a reasonable certainty was required to prove the fall caused Rech's knee injuries. *Harris,* 654 S.W.2d at 306. The only medical testimony in this case was presented in the form of medical records. These records indicate the fall may have aggravated Rech's pre-existing condition. However, there is no evidence supporting a connection between the fall and the surgeries for which recovery is sought. The doctor did not indicate the fall necessitated the surgeries. To the contrary, Dr. Hunter stated he and Rech talked numerous times prior to the fall about total knee replacement.

While the jury could infer Rech sustained some injury as a result of the accident, it had no evidentiary basis to support a finding that the fall was a legal cause of Rech's knee surgeries. Without expert medical testimony, it was beyond the realm of the jury's ability to ascertain the connection, if any, between the fall and the surgeries given Rech's seventeen year history of pain, accidents, surgeries and degenerative arthritis. The medical records do not state the specific nature, extent or duration of Rech's injuries due to aggravation of his pre-existing condition. Nor do they state what medical treatment, if any, was necessary as a result of the aggravation versus the pre-existing condition. At most, the records prove Rech experienced pain and discomfort as a result of the aggravation. The records do not prove Rech sustained permanent injury from the fall requiring total knee replacement and orthroscopic surgery.

Although a plaintiff may recover for aggravation of an existing disease if caused by the negligence of defendant, plaintiff has the burden of showing a causal connection between the negligence, injury and damages sought. *Immekus v. Quigg,* 406 S.W.2d 298, 302 (Mo.App.1966). Here, Rech failed to present medical evidence from which a jury could infer that the injuries actually resulted from his fall. Rech failed to prove the element of proximate cause in the required manner. *See Harris,* 654 S.W.2d at 306. Accordingly, Rech did not make a submissible case because he failed to establish by substantial evidence that defendant's negligence was the proximate cause of his claimed injuries and damages. In the absence of expert medical testimony on causation, the jury should not have been permitted to decide the issue of negligence. The j.n.o.v. for defendant was proper.

Affirmed.

PUDLOWSKI, P.J., and GRIMM, J., concur.