KENNEDY, Judge.
Defendants Jack L. Pierce, et al., members of a farming partnership, appeal from judgments based upon jury verdicts of $50,-000 in favor of plaintiff Sharon Berten on her claim for personal injuries, and $10,000 for Jack D. Berten, Sharon’s husband, on his claim for loss of consortium.
Sharon Berten alleges she was injured in two different accidents caused by the negligence of the defendant in allowing their hogs to be in the public road. The first of the two accidents occurred April 16, 1986, when Mrs. Berten, on her way home from work in her automobile, struck a hog in the road. The second accident was August 2, 1986. This time, Mrs. Berten, on her way to work in her automobile, drove her car into a ditch at the side of the road and struck an embankment to avoid striking hogs, allegedly defendants’, in the roadway.
The injury claimed by Mrs. Berten to have resulted from the accidents is the aggravation of an earlier back injury, which she had sustained in January, 1985, when another car had struck from the rear a car in which she was riding as a passenger. As a result of the earlier injury, she was off work approximately six months, returning to work in July, 1985. She worked at a farm implement dealership. Her employment involved, among other duties, lifting heavy farm implement parts.
Defendants say there was no medical evidence Sharon Berten’s injuries were caused by the collisions shown in evidence. From that premise they argue the court erred in denying their claim for judgment n.o.v., and also erred in giving the verdict directing instruction and the damage instruction which hypothesized the causal relationship between the April 16 and the August 2 incidents and Sharon’s injuries. Specifically, they say there was no expert medical testimony making the connection, and that the jury without expert medical evidence could not find causation.
*686 We have concluded, upon a review of the testimony, that plaintiffs made a submissible case of causation by the aid of the “sudden onset” doctrine. That doctrine holds that causation may be inferred by a lay jury, without expert evidence, where the obvious symptoms of the injury follow the trauma immediately, or with only short delay, and the injury is the kind that is normally sustained in the kind of trauma being considered. The lay jury by its common sense and experience may reliably find that the injury occurred as a result of the trauma. Rech v. AAA Plumbing Co., 798 S.W.2d 194, 195-96 (Mo.App.1990); Harrison v. Weller, 423 S.W.2d 226, 230 (Mo.App.1967). The most obvious cases for the application of the doctrine are those where a person is involved in a violent accident and sustains a broken bone, or an open wound. DeMoulin v. Kissir, 446 S.W.2d 162, 165 (Mo.App.1969). It has also been applied in cases of back pain. Pruneau v. Smiljanich, 585 S.W.2d 252, 255 (Mo.App.1979); Sita v. Falstaff Brewing Corp., 425 S.W.2d 487, 490 (Mo.App.1968).
Sharon testified — we use her own words as nearly as possible — she was involved in a car wreck in January, 1985. Her daughter’s car, in which she was riding, had been rear-ended by another car. She sustained an injury like a whiplash injury. She hit her head. She had severe headaches and a lot of back pain and for some reason it went down into her legs and she had a lot of trouble walking. She was off work six months. She was treated by Dr. Lancourt, an orthopedic specialist. After six months she returned to work, but for the first month she did not lift more than 20 pounds. After that she was freed from restrictions. At the time of the first of the hog incidents on April 16 she still had problems from time to time — occasional headache, maybe neck strain — but her condition was good. She was able to do her job, including lifting heavy parts. She was not hurting.
Then on April 16 she was driving home when, coming over a hill, near defendants’ farm, she came upon a big hog in the road. She put her brakes on, but ended up hitting the hog before she got the car to a stop. She hit the steering wheel hard. She was all shook up. It was a terrible feeling. She was sick, she was hurting. She sat there for a while. Then she drove on to her home. She lay down on the bed. The pain didn’t subside. She called her 28-year-old daughter, Pam. Pam came to Sharon’s house and after they had waited for a while, Pam took her to the emergency room at Heartland East Hospital. Sharon was x-rayed and released, after being told to see her physician the next day. She returned home, hurting all over, especially the upper part of her back. The next day she saw Chiropractor Dr. Mackey who manipulated her bones, worked on her body. She was still hurting. After a number of treatments by Dr. Mackey — several each v/eek — she started feeling better, but it wouldn’t last. In September, 1986, she stopped going to Dr. Mackey because she couldn’t afford it. She paid him $1824. The pain was always there, it never left.
There was a period of months when she was without medical care. She then went to Dr. Paulson. Her condition was worsening. She couldn’t do her work or her household chores. Dr. Paulson found she had fibroid tumors, which she knew, and real bad anemia. She was having trouble swallowing, which was aggravated by spasms in her back. After the lapse of some further time, she went to see Dr. Escobar in May, 1987. He had her on some therapy, but mainly medication. In October, 1987, she had a myelogram in the hospital. From the myelogram she developed a form of meningitis. She was off work until February. (This was the first time she had missed any work since the hog incidents.) On October 19, 1987, Dr. Betsy McClure began treating Sharon, and continued to treat her up to time of the trial. Dr. McClure was the only physician who testified. She testified she had treated Sharon for back pain mainly, and anemia due to medication that she had tried to use to control her back pain. The back pain was in the upper area, between the shoulder blades.
The foregoing evidence is sufficient to bring a substantial part of plaintiff’s injuries within the “sudden onset” rule. With reference to her condition immediately before colliding with the hog on April 16, 1986, Sharon testified: “My condition was good ... I did [have problems resulting *687 from January, 1985, automobile accident], but, you, know, occasional headache, maybe neck strain, but my condition was good.” She testified that she was able to do her job, including lifting heavy tractor and farm implement parts. She apparently had been getting no medical care since her release from medical supervision the preceding August. She testified to the severe pain that followed immediately after her abrupt stop in her unsuccessful attempt to avoid collision with the hog. That pain then follows a clear and uninterrupted evi-dentiary track throughout much of the case.
Defendant presented no medical evidence.
Some of plaintiff’s symptoms and conditions in evidence could very likely not be related to the hog collision without expert testimony of the causal relationship. Evidence of such symptoms or conditions should have been excluded, or stricken, upon proper objection, see Appelhans v. Goldman, 349 S.W.2d 204 (Mo.1961); ALvey v. Sears, Roebuck & Co., 360 S.W.2d 231 (Mo.1962), or withdrawn from the jury’s consideration by a withdrawal instruction. See Harris v. Washington, 654 S.W.2d 303, 307 (Mo.App.1983). Appellant raises no point on this appeal that the court erred in allowing evidence of any of plaintiff’s symptoms or conditions. Plaintiff’s own testimony went in without any objection at all. (Defendant objected to the introduction of medical bills, but makes no point on this appeal that the court erred in admitting the bills.) No withdrawal instructions were requested.
We make no attempt, as appellant makes no attempt, to sort out those symptoms and conditions whose relation to the accident could not be inferred by the jury without expert testimony. Appellants, in order to establish their right to judgment n.o.v., or to establish error in the instruction which submitted the issue of causation of plaintiff’s injuries, must show that there was no substantial evidence that plaintiff’s claimed damages resulted from the hog collision. See McNamee v. Ehrhardt, 433 S.W.2d 318 (Mo.1968); Switzer v. Switzer, 373 S.W.2d 930 (Mo.1964); Dockery v. Mannisi, 636 S.W.2d 372 (Mo.App.1982). It is not enough, if some of the injuries were proved to have resulted from the accident, to show that some were not.
We have considered the two cases cited by appellant in support of his contention that the sudden onset doctrine is not applicable in this case. In Holmes v. Gamewell, 712 S.W.2d 34 (Mo.App.1986), there was no “sudden onset”; there was a delayed onset of symptoms, and the court took particular notice of that fact. In Rech v. AAA Plumbing Co., 798 S.W.2d 194 (Mo.App.1990), plaintiff had undergone knee surgeries which were the largest component in his claimed damages from a fall attributable to defendant’s negligence. Plaintiff had long standing arthritis of the knees and had contemplated knee replacement surgery. The court held that, even though plaintiff may have suffered some aggravation of his pre-existing condition, he made no submis-sible case of causation without expert medical testimony. The conclusion we have reached may be difficult to reconcile with the Rech case. On the other hand, it may be a significant distinguishing feature that the plaintiffs in Holmes and Rech, and in Handshy v. Hasty, infra, unlike plaintiffs in the present case, were claiming original injuries and not — as plaintiffs are claiming here — aggravation of pre-existing injuries.
We believe the court in Rech goes too far when it says, “the sudden onset doctrine is unavailable when a pre-existing condition or intervening factor exists.” 798 S.W.2d at 196. For that broad proposition it cites Holmes, 712 S.W.2d at 37 which on its facts did not present a sudden onset situation. Another case declining to apply the sudden onset doctrine is a case where plaintiff suffered from a pre-existing condition very similar to the one for which he was claiming damages. The court said the cause of plaintiff’s injuries presented a “highly complex matter far beyond the realm of common knowledge; an issue particularly appropriate for scientific opin-ion....” Handshy v. Hasty, 444 S.W.2d 48, 53 (Mo.App.1969). That language does not describe the present case.
Appellants complain of the admission of the testimony of witness James *688 Shelton that he saw hogs out on Highway 116, where the accident occurred, in the summer of 1986. He was familiar with the farms along Highway 116, and knew of no other farm than defendants' where hogs were raised or kept. Defendants denied ownership of the hogs which caused Sharon Berten’s accident. Witness Shelton’s testimony was admissible in the discretion of the trial court on the issue of the hogs’ ownership. Appellants’ point is denied.
Defendants also allege error in the trial court’s admission of testimony of Mary Jean Cabiness, similar to that of James Shelton. Defendants waived objection to the Cabiness testimony, though, when they did not object to it at trial.
Appellants say also that the evidence did not establish prima facie their ownership of the hogs. There is a good deal of circumstantial evidence of that fact, however, in addition to appellant Jack Pierce’s implied admission of ownership to which Sharon Berten testified. Appellants’ point is denied.
Judgment affirmed.